First National Bank of Jamestown *v.* Sheldon (et al., Appellants).

Argued April 28, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Irving W. Coleman*, with him *D. M. Garrahan*, for appellants.

*Samuel D. Frederick*, and *Snyder, Wert & Wilcox*, submitted a brief for appellee.

OPINION BY DITHRICH, J., July 17, 1947:

Upon the following case stated in replevin, the learned judge of the court below entered judgment in favor of plaintiff.

"Where a chattel mortgage lien is properly entered in the State of New York and without the knowledge or consent of the Mortgagee, the Mortgagor moves the personal property into the Commonwealth of Pennsylvania and sells the personal property, namely a motor vehicle, to an innocent purchaser for value, who had no knowledge or notice of the properly recorded lien, is

the Mortgagee Plaintiff entitled to recover the automobile in replevin, or the amount of its lien, or does the innocent purchaser for value, the Defendant in possession of the automobile at the time the Writ of Replevin issued, have the right to keep the motor vehicle free and clear of the lien of the chattel mortgage?

"If the Court be of the opinion that the Plaintiff Bank has the right to recover in replevin, then the Court is respectfully requested to enter judgment in favor of the Plaintiff for the motor vehicle, or the sum of Four hundred Dollars with interest thereon from April 8, 1946.

"If the Court be of the opinion that the innocent purchaser for value, namely, Wilbur M. Mack, took the motor vehicle free and clear of the Plaintiff's lien, then the Court is respectfully requested to enter judgment in favor of Wilbur M. Mack, awarding him the automobile or the sum of Nine hundred sixty-eight ($968.00) Dollars.

"Each party reserves the right of appeal."

Both defendant in possession and the intervening defendant appealed. The appeals were consolidated and the case is now before us for disposition on the consolidated appeal.

From the agreed facts it appears that the original defendant, Gleason E. Sheldon, a resident of the State of New York, executed and delivered to the plaintiff a chattel mortgage upon an automobile. The mortgage was duly filed in the proper county in the State of New York and in accordance with the provisions of the laws of that state. The defendant without the knowledge or consent of the plaintiff brought the motor vehicle into Northampton County, Pennsylvania, and sold it to George Mychuda, trading as Northampton Auto Exchange, the intervening defendant, who was an innocent purchaser for value and had no notice of the lien recorded in favor of the plaintiff in the State of New York.

The intervening defendant had the motor vehicle duly titled according to the provisions of the Pennsylvania Vehicle Code, 1929, May 1, P. L. 905, 75 PS 1, and later sold the car to Wilbur M. Mack, defendant in possession, who was also an innocent purchaser for value and likewise had no notice of any lien recorded in the State of New York.

Prior to the passage of the Chattel Mortgage Act of June 1, 1945, P. L. 1358, 21 PS 940, it had been the settled public policy of the law of this Commonwealth, as manifested by legislative acts and judicial decisions, to frown upon the mortgaging of chattels in Pennsylvania. *Roberts' and Pyne's Appeal,* 60 Pa. 400; *Klaus v. Majestic A. H. Co.,* 250 Pa. 194, 95 A. 451; *Kaufmann & Baer v. Monroe Motor Line,* 124 Pa. Superior Ct. 27, 187 A. 296.

The rule, which had its genesis in a wise policy of protecting third persons such as innocent purchasers from, and creditors of, the owner, applied even though the chattel mortgage was executed outside the state in jurisdictions where such instruments were recognized. The rights of a foreign mortgagee were not upheld in such cases although the property had been brought within this state without his knowledge or consent. *Bank v. Carr,* 15 Pa. Superior Ct. 346; *Commercial Bkg. Corp. v. Berkowitz et al.,* 104 Pa. Superior Ct. 523, 159 A. 214.

This case turns then on the effect of the Act of 1945, supra, as respects the mortgaging of motor vehicles. The learned court below held that the passage of the Act was a *"complete reversal* of our public policy upon the question of the validity of chattel mortgages against bona fide purchasers and creditors." (Emphasis added.) It was there that the learned court first fell into error. One notable exception prevents it from being a "complete reversal" and that is the proviso in section 5 of the Act, "That the filing as provided in section eight of this act of a chattel mortgage against any motor vehicle, trailer or semi-trailer with respect to which a

certificate of title is issuable under the Vehicle Code, approved the first day of May, one thousand nine hundred twenty-nine (Pamphlet Laws, nine hundred five), as amended, shall not operate as notice of the lien thereof to the Commonwealth, creditors and purchasers, unless and until a statement of such lien is noted on the certificate of title issued with respect to such motor vehicle, trailer or semi-trailer pursuant to the provisions of said Vehicle Code."

The legislature made no exception in favor of chattel mortgages executed and effective in other states, where the motor vehicle embraced in such instrument is subsequently brought into this state and here sold for a valuable consideration and without notice. Since the Chattel Mortgage Act is a departure from the heretofore settled public policy of the state, we cannot extend its provisions farther than was clearly intended by the legislature. Had the legislature intended the proviso not to apply to motor vehicles mortgaged in other states and brought into Pennsylvania, it should, and no doubt would, have said so. In the absence of a clear intent by the legislature to the contrary, it must be held to have intended that the law applicable to motor vehicles brought into this state from foreign jurisdictions should remain as it was before the passage of the Act of 1945.

The Act changes our public policy only to the extent of its express provisions. It specifically treats motor vehicles differently than other types of chattels. It was within the power of the legislature to exclude motor vehicles from its provisions entirely. Instead, it provided for an exception in respect of such vehicles only. The Act, therefore, should be judicially interpreted so as to comply with this exception and thus give effect to the obvious intention of the legislature.

"Under the common law it is essential to the validity of a pledge of personal property that either actual or constructive possession of the pledged property he delivered to the pledgees. 49 C. J. section 35, p. 910, and cases there cited": *Ambler Nat. Bk. v. Md. Credit Fin. Co.,*

147 Pa. Superior Ct. 496, 502, 24 A. 2d 123. The Act being in derogation of the common law and the traditional public policy of this Commonwealth, the proviso in section 5 would no doubt be strictly construed against a resident of Pennsylvania who failed to comply with its requirements. It should not be liberally construed beyond its express terms in the case of a non-resident mortgagee.

The weakness of appellee's position as we view it is that the State of New York does not have a system of titling automobiles similar to that in Pennsylvania. In New York motor vehicle licenses are issued on the presentation of a bill of sale and there is no requirement that any encumbrance be noted thereon. Adherence to the principal of comity between states in the circumstances would validate transactions which contravene the settled public policy of this state. *Chambers v. Consolidated Garage Co.*, 210 S. W. 565; *Willys-Overland Co. v. Chapman*, 206 S. W. 978; *Turnbull v. Cole*, 201 Pac. 887.

Furthermore, applying the universally accepted principle that when one of two innocent persons must suffer through the fraud of a third person, the one who made it possible for the fraud to be perpetrated must bear the loss, it readily appears that the loss in this case should be borne by the mortgagee who, by permitting the mortgagor to remain in possession of the automobile, placed him in a position to perpetrate a fraud upon innocent purchasers without notice of the mortgage which he did in fact perpetrate on appellants. *Chambers v. Consolidated Garage Co.*, supra.

Judicial comity does not require this state to enforce a mortgage which, though valid under the lex domicilii, conflicts with the policy of this state relating to the registration of motor vehicles and impairs the rights or remedies of domestic purchasers without notice.

The judgment is reversed and here entered for appellants.