Seaboard Consumer Discount Company, Appellant, *v.* Landau's, Inc.

Argued March 6, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*H. Monroe Houtz,* with him *Richard M. Hughes, 2nd,* for appellant.

*Louis Shaffer,* for appellee.

OPINION BY DITHRICH, J., July 20, 1950:

Appellant brought this action in replevin for the possession or value of various articles of furniture. The material facts are not in dispute. March 18, 1948, appellant filed a chattel mortgage encumbering the furniture, which was in the possession of Frank and Lillian Zengulis, mortgagors. Lillian Zengulis had purchased certain other merchandise from appellee under a bailment lease. Appellee entered the judgment note accompanying the bailment lease, and under a writ of fi. fa. issued at the suit of appellee the Sheriff of Luzerne County on May 26, 1948, sold to appellee certain property of the Zengulises, including the furniture encumbered by appellant's chattel mortgage. Appellee subsequently sold the furniture to a secondhand dealer in New York City, whose name is unknown. At no time was appellee aware of the existence of the chattel mortgage.

Since the parties had entered into a stipulation as to the facts and the only question involved was one of law, the case was heard by the court en banc and judgment was entered for the defendant company, appellee, and against the plaintiff company, appellant.

The issue is whether an execution creditor who has purchased at a judicial sale goods which were encumbered by a chattel mortgage and who has subsequently disposed of them in good faith, without knowledge of the existence of the mortgage, is liable to the mortgagee for

the value of the goods at the time of the taking by the execution creditor.

The issue must be determined by the interpretation to be given the provisions of the Chattel Mortgage Act of June 1, 1945, P. L. 1358, 21 PS §940.1, since it could not have arisen prior thereto. Section 5 of the Act, 21 PS §940.5, provides, in part, that: "Any chattel mortgage executed pursuant to this act shall be a lien upon the property therein described, which lien shall be good and valid against and superior to all rights of subsequent purchasers, . . . other subsequent lienors and encumbrancers, and all persons subsequently dealing with the mortgaged property or subsequently acquiring an interest therein from the time of filing of the mortgage, . . ."

It is the obvious intent of the Act that due filing of a chattel mortgage shall operate as notice thereof to "all persons subsequently dealing with the mortgaged property." Appellee contends, however, that the effect of such notice and the prime purpose of the Act is to protect the lien of the mortgage in whosoever's possession the property may be found. In support of its contention it cites section 6 (c) and the final sentence in the second proviso of section 5. Section 6 (c) provides, in part, that: "Any property covered by a chattel mortgage which may be sold by the mortgagor shall remain subject to the lien of the mortgage . . ." The second proviso of section 5 (we shall have occasion hereinafter to refer to the first proviso) is, in part: "That . . . a judicial sale on liens subsequent to the lien of a chattel mortgage shall not divest the lien of such chattel mortgage and the title of the purchaser at such judicial sale shall be subject to the lien of such chattel mortgage."

We agree with this contention. In interpreting the Act in *First National Bank of Jamestown v. Sheldon,* 161 Pa. Superior Ct. 265 (allocatur refused, *ib.* xxv);

54 A. 2d 61, the first and only time prior hereto that it has been before an appellate court of this State, we said (pages 268, 269):

"Prior to the passage of the Chattel Mortgage Act . . . it had been the settled public policy of the law of this Commonwealth, as manifested by legislative acts and judicial decisions, to frown upon the mortgaging of chattels in Pennsylvania. [Citing cases.]

"The rule . . . had its genesis in a wise policy of protecting third persons such as innocent purchasers from, and creditors of, the owner, . . . [and]

"The Act changes our public policy only to the extent of its express provisions."

In that case we held that the lien of a chattel mortgage did not arise on a motor vehicle unless and until it was noted on the certificate of title of said vehicle, as specifically provided by section 5 of the Act.[1] There we were dealing with a specific provision of the Act applying to motor vehicles. While the proviso now before us is general in its application, we feel that if the Legislature had intended not only that "a judicial sale on liens subsequent to the lien of a chattel mortgage shall not divest the lien of such . . . mortgage," but that a purchaser at such sale who subsequently disposed of the chattel in good faith and without knowledge of the existence of the mortgage should be held liable to the mortgagee for the value of the chattel at the time of the tak-

---

[1] "Provided, . . . That the filing . . . of a chattel mortgage against any motor vehicle, . . . with respect to which a certificate of title is issuable under the Vehicle Code, approved the first day of May, one thousand nine hundred twenty-nine (Phamphlet Laws, nine hundred five), as amended, shall not operate as notice of the lien thereof to the Commonwealth, creditors and purchasers, unless and until a statement of such lien is noted on the certificate of title issued with respect to such motor vehicle, . . . pursuant to the provisions of said Vehicle Code."

ing by the execution creditor, it should, and no doubt would, have specifically so provided.

In conclusion we reiterate that "Since the Chattel Mortgage Act is a departure from the heretofore settled public policy of the state, we cannot extend its provisions farther than was clearly intended by the legislature": *First National Bank of Jamestown v. Sheldon,* supra (page 269).

Judgment affirmed.