## GFC Corporation v. Antrim

*Louis Shaffer*, for plaintiff.

*Edward E. Hosey*, for defendant.

FLANNERY, J., May 26, 1953.—The case, in replevin, was tried before the court without a jury and the facts were agreed by stipulation:

They are:

1. On December 14, 1950, in the State of Florida, the Fort Lauderdale Lincoln-Mercury Company sold to one Tony Nielson, then a resident of that State, a used 1949 Lincoln convertible, model 9 EH.

2. The total sales price was $2,000 and the transaction was consummated by conditional sales contract under which, after deducting the cash payment and trade in value of another used car, there was a balance of $1,300.

3. The conditional sales contract provided that: The unpaid balance of $1,300 together with insurance,

etc., in the sum of $315.35, or a total of $1,615.35 was to be paid by the purchaser in monthly instalments of $107.69.

4. On December 21, 1950, the Fort Lauderdale Lincoln-Mercury Company assigned the conditional sales contract to plaintiff, the GFC Corporation.

5. In pursuance of the arrangements, the State of Florida, on February 26, 1951, issued a motor vehicle certificate of title indicating that the registered owner was Tony Nielson and that the first lien holder was the GFC Corporation in the amount of $1,615.35.

6. The conditional sales contract provided, among other things, that Tony Nielson was to keep the automobile at the address indicated in Hollywood, Fla., and it was not to be removed without the consent of plaintiff.

7. Nielson never made the payments and left the State of Florida without the knowledge or consent of plaintiff.

8. Subsequently there was filed in the State of Connecticut a bill of sale from one H. B. Burns to Tony Nielson dated January 10, 1950, which purported to convey the car in question for the sum of $1,850 "free and clear of all liens or notes."

9. Under date of March 9, 1951, there was issued by the State of Connecticut, Department of Motor Vehicles, a "Passenger-Registration" certificate in the name of Tony Nielson, 56 Town Hill Avenue, Danbury, Conn., describing the automobile in question. This is similar in its nature to a certificate of title as we understand that term in Pennsylvania.

10. On April 12, 1951, the automobile, together with certificate and bill of sale, was signed over to C. E. Wagner, of Hazleton, Pa., by Tony Nielson for good and valuable consideration.

11. On the strength of the bill of sale and passenger registration duly assigned the Commonwealth of Penn-

sylvania, on April 12, 1951, issued a certificate of title to C. E. Wagner free of liens or encumbrances.

12. On May 23, 1951, C. E. Wagner sold the car and assigned the certificate of title to Russell L. Antrim, defendant in this case, for the sum of $1,795 and on May 23, 1951, upon application by Russell L. Antrim therefor the Commonwealth of Pennsylvania issued to him a new certificate of title free of liens or encumbrances.

13. On July 18, 1951, plaintiff discovered that the car was in Luzerne County and on July 26, 1951, it filed in the prothonotary's office conditional sales docket 12, page 124B to 79, October term, 1951, an executed copy of the conditional sales agreement. This replevin action followed.

14. It is finally stipulated that the GFC Corporation, C. E. Wagner and defendant, Russell L. Antrim, all and each acted in good faith.

15. Tony Nielson has disappeared and his whereabouts up to the present writing remain under cover.

We are confronted with the situation wherein the defendant, Russell L. Antrim, is an innocent purchaser for value without notice of any lien or encumbrance recorded in the State of Florida. And while it may not be decisive in these proceedings, it is not amiss to record that C. E. Wagner, who sold him the car, was also in his turn an innocent purchaser for value without notice of any lien or encumbrance. The fraud—and in the absence of any other explanation we must arrive at that conclusion—was perpetrated by Nielson who was put in position to accomplish his fraudulent purpose by the GFC Corporation, plaintiff here, when it entrusted the chattel to his custody under the circumstances described. That they also were innocent and did what they had a perfect right to do in no way affects the ultimate conclusions at which we arrive.

We are satisfied that the case at bar is governed by the authority of First National Bank of Jamestown v. Sheldon et al., 161 Pa. Superior Ct. 265 (1947), which was cited with approval in the recent case of Rice Street Motors, to use, v. Smith et al., 167 Pa. Superior Ct. 159, and which was accepted still more recently by the Philadelphia courts in M. Andrade & Son, Inc., v. Martin et al., 80 D. & C. 419 (1951), in a case almost identical with ours.

The facts of the Sheldon case, supra, are stated in the opinion of the Superior Court, as follows, at page 267:

"From the agreed facts it appears that the original defendant, Gleason E. Sheldon, a resident of the State of New York, executed and delivered to the plaintiff a chattel mortgage upon an automobile. The mortgage was duly filed in the proper county in the State of New York and in accordance with the provisions of the laws of that state. The defendant without the knowledge or consent of the plaintiff brought the motor vehicle into Northampton county, Pennsylvania, and sold it to George Mychuda, trading as Northampton Auto Exchange, the intervening defendant, who was an innocent purchaser for value and had no notice of the lien recorded in favor of the plaintiff in the State of New York.

"The intervening defendant had the motor vehicle duly titled according to the provision of the Pennsylvania Vehicle Code, 1929, May 1, P. L. 905, 75 PS §1, and later sold the car to Wilbur M. Mack, defendant in possession, who was also an innocent purchaser for value and likewise had no notice of any lien recorded in the State of New York. . . ."

The facts and the legal problems arising out of them are so analogous to those before us that the reasoning of the court has direct application, at page 268:

"This case turns then on the effect of the Act of 1945, *supra*, as respects the mortgaging of motor vehicles. The learned Court below held that the passage of the Act was a *complete reversal* of our public policy upon the question of the validity of chattel mortgages against *bona fide* purchasers and creditors. (Italics added). It was there that the learned Court first fell into error. One notable exception prevents it from being a 'complete reversal' and that is the proviso in section 5 of the Act. 'That the filing as provided in section eight of this Act of a chattel mortgage against any motor vehicle, trailer or semi-trailer with respect to which a certificate of title is issuable under The Vehicle Code, approved the first day of May, one thousand nine hundred twenty-nine (Pamphlet Laws, nine hundred five), as amended, shall not operate as notice of the lien thereof to the Commonwealth, creditors and purchasers, unless and until a statement of such lien is noted on the certificate of title issued with respect to such motor vehicle, trailer or semi-trailer pursuant to the provisions of said Vehicle Code."

It is true the court there considered a chattel mortgage and not a conditional sale contract but, according to a more recent decision of the same court, the principles are the same as to each.

In Rice Street Motors v. Smith, supra, that court held, at page 162:

"In First National Bank of Jamestown v. Sheldon, 161 Pa. Superior 265 (Allocatur refused ib xxv), 54 A. 2d 61, we held that where an automobile encumbered with a chattel mortgage lien is brought into this state and sold to an innocent purchaser for value, without knowledge or notice of the lien, the purchaser acquires title to the automobile free of the lien of the mortgage. We see no reason why the same principle should not apply to an automobile that has been sold under a conditional sales agreement where the pur-

chaser is given possession of the vehicle by virtue of which he obtains a certificate of title on which there is no notice of any encumbrance. What we said in respect of the appellee's position in that case is equally applicable to appellant's position here. . . ."

Again in M. Andrade & Son, Inc. v. Martin et al., supra, the action was in replevin for the recovery of an automobile under circumstances similar to ours, and the court awarded the chattel to the innocent purchaser for value in Pennsylvania. In that case, the conditional sales contract was entered into in the State of Massachusetts with one Martin as the purchaser. Martin applied for a Pennsylvania certificate of title and filed with the application a Rhode Island registration card with respect to his ownership which did not indicate that it was subject to any encumbrance. He also stated under oath that there was no encumbrance on the chattel and, on the strength of such presentation, he received a clean certificate of title in this State. Martin then sold the car to Samuel Gorson, Inc., of Philadelphia, an innocent purchaser for value. Plaintiff, assignee of the conditional sales contract from the Massachusetts corporation which made the loan originally, instituted replevin proceedings in Pennsylvania. The Philadelphia court, on the authority of these two decisions, Jamestown v. Sheldon, supra, and Rice Motors v. Smith, supra, awarded the automobile to defendant, George Gorson, Inc.

For these reasons we are constrained to hold that defendant must prevail.

Wherefore the court finds for defendant, Russell L. Antrim, and determines that: Defendant has the title to and right of possession of the used 1949 Lincoln convertible, model 9 EH 46729 of a value of $1,615.35, as averred by plaintiff in its bond of twice that amount; and defendant is entitled to interest at six

percent on that sum for six months, the period of its detention by the sheriff at the behest of plaintiff.

The prothonotary shall enter these findings and give notice thereof to the parties or their counsel and, unless exceptions thereto are filed within four days thereafter, the prothonotary shall enter judgment in accordance with these findings.

## DECISION ON EXCEPTIONS

FLANNERY, J., June 16, 1954.—This matter is before the court on plaintiff's exceptions to the decision of the court filed May 26, 1953. It has been argued twice before the court en banc. After argument we directed a reargument by order dated March 3, 1954.

The facts have been fully stated in the decision of the court. Those material to the questions now raised may be summarized as follows: On December 14, 1950, Fort Lauderdale Lincoln-Mercury Company sold a used 1949 Lincoln convertible to one Nielson by conditional sale contract and thereafter assigned the contract to plaintiff. The State of Florida issued a certificate of title showing Nielson as the registered owner and plaintiff as first lienholder in the sum of $1,615.35. Nielson made no payments and he left the State without the knowledge of plaintiff.

Subsequently there was filed in the State of Connecticut a bill of sale from one Burns to Nielson dated January 10, 1950, purporting to convey the car for $1,850 "free and clear of all liens or notes." Under date of March 9, 1951, Connecticut issued a "Passenger-Registration" certificate in the name of Nielson similar in nature to a certificate of title as the term is understood in Pennsylvania. On April 12, 1951, the automobile, together with certificate and bill of sale, were signed over to C. E. Wagner, of Hazleton, Pa., innocent purchaser for value. The Commonwealth duly issued a certificate of title free of liens and en-

cumbrances to Wagner. On May 23, 1951, he sold the car to defendant, and the Commonwealth duly issued him a certificate of title free of liens and encumbrances.

Plaintiff contends the court erred in deciding the case on the authority of First National Bank of Jamestown v. Sheldon, 161 Pa. Superior Ct. 265, and Rice Street Motors v. Smith et al., 167 Pa. Superior Ct. 159, arguing that the applicability of the rulings of those cases depends upon the validity of the title received in Connecticut and that the burden is on defendant to establish that the title issued to Nielson by Connecticut was a valid title.

Section 2383 of the General Statutes of Connecticut with regard to the registration of motor vehicles provides:

"Any motor vehicle registration certificate or operator's license issued upon an application containing any material false statement shall be void from the date of its issue. . . ."

We agree with plaintiff that Nielson's application must have contained a material false statement so as to make the registration certificate issued void. But the question is what effect is to be given that void registration in Pennsylvania? Plaintiff contends that since the Connecticut registration certificate is void, the Sheldon and Rice cases, supra, do not apply since they were based on valid registrations. We do not agree.

Nielson had possession of the automobile, and he also had a Connecticut registration card, a sufficient indicium of ownership when coupled with possession to effect a valid transfer of title in Pennsylvania. Section 102 of The Vehicle Code, as amended (75 PS §2), defines owner as:

"A person . . . holding the legal title of a vehicle; or, in the event a vehicle is the subject of a chattel

mortgage or an agreement for the conditional sale or lease thereof or other like agreement, with the right of purchase upon performance of the conditions stated in the agreement, and with an immediate right of possession vested in the mortgagor, conditional vendee or lessee, then such mortgagor, conditional vendee or lessee shall be deemed the owner for the purpose of this Act."

And as was said in Rice Street Motors v. Smith et al., supra, citing First National Bank of Jamestown v. Sheldon, supra, at pages 163 and 164:

" 'The weakness of appellee's position as we view it is that the State of New York does not have a system of titling automobiles similar to that in Pennsylvania. . . . . *Adherence to the principle of comity between states in the circumstances would validate transactions which contravene the settled public policy of this state.* . . .

" 'Furthermore, applying the universally accepted principle that when one of two innocent persons must suffer through the fraud of a third person, the one who made it possible for the fraud to be perpetrated must bear the loss, it readily appears that the loss in this case should be borne by the mortgagee [use plaintiff] who, by permitting the mortgagor [conditional vendee] to remain in possession of the automobile, placed him in a position to perpetrate a fraud upon innocent purchasers without notice of the mortgage [conditional sales agreement] which he did in fact perpetrate on appellants [appellees]. . . . .

" 'Judicial comity does not require this state to enforce a mortgage [conditional sales agreement] which, though valid under the *lex domicilii*, conflicts with the policy of this state relating to the registration of motor vehicles and impairs the rights or remedies of domestic purchasers without notice.' " (Italics supplied.)

Plaintiff's ultimate contention is that there should be an obligation on the part of a purchaser of an automobile registered in another State to make inquiry of such other State to ascertain where the car was originally purchased, which further inquiry would then establish whether there was any encumbrance on the title. He cites us no authority. We have found none and it appears that the law of this Commonwealth is to the contrary: Rice Street Motors v. Smith et al., supra. As the court said in Discount & Credit Corporation v. Ortman, 52 D. & C. 153, 157:

". . . The status of property is governed by the *lex loci rei*. While our courts may, as a matter of comity, recognize the property interests in a chattel by reference to the laws of the State of contract or where the property had been previously located, such recognition will not be afforded where the result thereby effected is contrary to the public policy of the State: . . ."

And as the Court of Common Pleas of Philadelphia County said more recently in M. Andrade & Son, Inc. v. Martin et al., 80 D. & C. 419, 426:

". . . The Sheldon and Smith cases, *supra*, regard a *bona fide* purchaser as protected by a clear certificate of title issued in this State even though a valid encumbrance exists in a sister State. The Superior Court in these cases emphasized the policy of this Commonwealth in refusing efficacy to a lien until it is noted on the certificate of title. . . ."

It may be apposite to note that the Uniform Commercial Code of April 6, 1953, P. L. 3, which becomes effective July 1, 1954, deals with the question posed by plaintiff and may provide additional safeguards for the security interest. Section 103, subsec. 3, art. 9, provides:

". . . If the security interest was already perfected under the law of the jurisdiction where the property

was kept before being brought into this state, the security interest continues perfected here for four months and also thereafter if within the four month period it is perfected here. . . ."

If the code were already in effect plaintiff might have availed itself of its provisions, assuming the factual situation warranted such a position.

Section 5 of the Uniform Conditional Sales Act provides (69 PS §402):

"Every provision in a conditional sale reserving property in the seller shall be void as to any purchaser from or creditor of the buyer who, without notice of such provision, purchases the goods . . . before the contract or a copy thereof shall be filed, as hereinafter provided, unless such contract or copy is so filed within ten days after the making of the conditional sale."

Section 14 of the same act, treating on refiling on removal of the property from the jurisdiction provides (69 PS §432):

"When prior to the performance of the condition the goods are removed by the buyer . . . from another State into a filing district in this State where such contract or copy is not filed, the reservation of the property in the seller shall be void as to the purchasers and creditors described in section five unless the conditional sale contract or a copy thereof shall be filed in the filing district to which the goods are removed within ten days after the seller has received notice of the filing district to which the goods have been removed. . . ."

While the record in the instant case does not affirmatively show that the original conditional sale contract was ever filed, we infer due filing from the Florida certificate of title in evidence since it carries the legend:

"The liens shown hereon are officially recorded by the Motor Vehicle Commissioner."

But if we assume due recording in Florida and proper filing in Pennsylvania under section 14, supra, and the record does show that the Pennsylvania filing was within 10 days of the receipt of notice, we do not believe that plaintiff's creditor rights can prevail here where defendant is an innocent purchaser for value, and the subject matter is a motor vehicle purchased from a legitimate dealer and the buyer relied on a certificate of title issued in Pennsylvania showing no liens or encumbrances. Rice Street Motors v. Smith, supra. And see 7 Blashfield, Cyclopedia of Automobile Law and Practice, sec. 4578, et seq.; 11 American Jurisprudence A. L. I., Conflict of Laws, sec. 77, et seq.; Annotation, Conflict of Laws as to Chattel Mortgages and Conditional Sales of Chattels, 13 A. L. R. 2d 1312, 1353.

In Osgood Co. v. Emblem Oil Co., 111 Pa. Superior Ct. 38, the court sustained the applicability of section 14, supra, to a conditional sale contract entered into in Ohio on goods subsequently brought into Pennsylvania. This case rose out of the contending claims of creditors, and the property involved was a steam shovel.

The instant case involves the rights of an innocent purchaser of an automobile for value from a reputable dealer and involves the certificate of title provisions of The Vehicle Code. We are of the opinion that the weight attached to the issuance of a certificate of title showing no encumbrances by the Superior Court in Rice Street Motors v. Smith, supra, and the invocation of the equitable doctrine that where one of two innocent parties must suffer a loss, it must be borne by him whose act or omission made the loss possible, leaves us no alternative than to find against creditor plaintiff.

Now, therefore, plaintiff's exceptions are dismissed.