## General Motors Acceptance Corp.
## v. Manheim Auto Auction

*Windolph, Burkholder & Hartman*, for plaintiff.

*Richard M. Martin*, for defendant.

JOHNSTONE, J., April 7, 1961.—This case started out as an action in replevin without bond to recover possession of a 1960 Chevrolet two-door convertible bearing manufacturer's serial no. 01867T-154244, or its value of $3,326.76. By stipulation of record, the parties agreed that the automobile had a present value of $2,300 and that, upon the filing of a bond in double that amount, the sheriff was authorized to

take possession of the automobile and deliver it to plaintiff without the usual waiting period, since defendant had no intention of filing a counterbond. Accordingly, plaintiff filed its bond with corporate surety, and the sheriff delivered the automobile to plaintiff.

The pleadings consist of a complaint, an answer containing new matter, a reply and motions by both parties for judgment on the pleadings. The party, or as in this case both parties, moving for judgment on the pleadings under Pennsylvania Rule of Civil Procedure 1034, admit, for the purpose of the motion, the truth of all allegations of the other party offered in denial of his own allegations: Mayer Brothers Construction Company v. Erie Parking Authority, 189 Pa. Superior Ct. 1. Judgment on the pleadings may be granted only in clear cases and where there are no issues of fact: Waldman v. Shoemaker, 367 Pa. 587.

The pertinent facts appearing in the pleadings reveal that Park Slope Chevrolet, Inc., is an automobile dealer in Brooklyn, N. Y., and that on March 28, 1960, it sold the Chevrolet in question to Robert Lorna for the consideration of $3,947.70. Lorna paid $620.94 in cash and agreed in writing to pay the balance of $3,326.76 in 36 monthly installments of $92.41, each beginning April 29, 1960. The writing also provided that title to the automobile was reserved by the seller and that the seller had a security interest in the automobile until the balance due was fully paid.

The installment contract was assigned to General Motors Acceptance Corporation on the same date, and the contract and assignment were filed in the office of the New York City Register, Kings County, on April 4, 1960, as conditional bill of sale P-22905. A certified copy of the installment contract, which includes in its terms a financing statement, was filed

in the Court of Common Pleas of Lackawanna County, Pa., on July 19, 1960, at 9 a.m., in security transaction book 9, page 79, no. 1445. A certified copy of said contract was also filed in the court of Common Pleas of Lancaster County, Pa., on July 21, 1960, at 7:50 a.m. in financing statement docket no. 19, page 316, no. 946.

None of the installments due under the installment contract have ever been paid by the purchaser, Lorna, or anyone on his behalf. Under the terms of the contract, a default entitles the seller to declare the unpaid balance immediately due and payable and authorizes the taking of immediate possession of the automobile.

On March 30, 1960, Lorna, the original purchaser from Park Slope Chevrolet, Inc., assigned the 1960 passenger vehicle registration renewal stub 2 issued by the Bureau of Motor Vehicles of the State of New York to John Varno of Scranton, Pa., and thereby transferred the automobile in question to John Varno. On the same date, Varno applied to the Bureau of Motor Vehicles of the Commonwealth of Pennsylvania for a certificate of title to the said automobile and in the application averred that it was free of encumbrances. Certificate of title no. A13776421 for said automobile was issued by the Department of Revenue, Bureau of Motor Vehicles, to Varno on the same day, and the title issued was free of any encumbrances noted thereon.

Varno then sold the Chevrolet to Limongelli Bros., of Pittston, Pa., who in turn sold it to Morris Miller of Lancaster, Pa. The certificate of title was transferred directly from Varno to Miller without being transferred to Limongelli Bros. A certificate of title to the Chevrolet in question was issued by the the Department of Revenue of the Commonwealth of Penn-

sylvania to Miller on April 7, 1960, free of encumbrances, and Miller thereby became an innocent purchaser for value. Miller, in turn, transferred the Chevrolet to defendant, Manheim Auto Auction, Inc., which was also an innocent purchaser for value, and which also obtained a Pennsylvania certificate of title.

We also learn from the pleadings that under sections 60-81 of Article 4 of the Personal Property Law of New York, the holder of a security interest in an automobile has a perfected interest therein if, within 10 days of the date of the creation of the security interest, the holder thereof files it in the office of the register. Section 65 provides that reservations of title in the seller are void as to any purchaser from the buyer, without notice, before the contract is filed, unless the contract is filed within 10 days after the making of the conditional sale. There is no such thing in the State of New York as a certificate of title for an automobile and there is, therefore, no system of noting encumbrances or security interests on the certificate of title such as exists in Pennsylvania.

From the foregoing facts it is apparent that plaintiff complied with the New York Personal Property Law when it filed the installment contract showing a security interest in the Chevrolet in question in the office of the Register of Kings County on April 4, 1960, which was within 10 days of March 28, 1960, the date the security interest was created. A certified copy of the contract was filed as a financing statement on July 19, 1960, in Lackawanna County and on July 21, 1960, in Lancaster County, both of which dates are within four months of the date when the automobile was brought into Pennsylvania. The exact date when the Chevrolet was brought into Pennsylvania does not appear, but it must have been in this State on March 30, 1960, since on that date Lorna transferred it to Varno of Scranton, and on the same date Varno secured a

Pennsylvania certificate of title. It, therefore, follows that the Chevrolet was in Pennsylvania before plaintiff filed its installment contract in Kings County, N. Y., on April 4, 1960.

If the Chevrolet had remained in New York State, unquestionably plaintiff would be protected, since it had complied with the statute and perfected its security interest. However, the automobile was brought into Pennsylvania, and we must determine which of the two innocent parties, use-plaintiff or defendant, must suffer for the fraud perpetrated by Robert Lorna. This calls for an application of the universally accepted principle that when one of two innocent persons must suffer through the fraud of a third person, the one who made it possible for the fraud to be perpetrated must bear the loss: First National Bank of Jamestown v. Sheldon, 161 Pa. Superior Ct. 265, 270.

Prior to the effective date, July 1, 1954, of the Uniform Commercial Code—Secured Transactions, the law in this State was stated in the Sheldon case, supra. In that case, under a factual situation similar to that of the present case, the court held that a chattel mortgage lien on an automobile properly entered in New York State is not binding on a purchaser for value in Pennsylvania without notice where the mortgagor brings the automobile into Pennsylvania, sells the same to an innocent purchaser for value without notice, who obtains a certificate of title under the Pennsylvania Vehicle Code. The Chattel Mortgage Act of June 1, 1945, P. L. 1358, 21 PS §940, since repealed by the Uniform Commercial Code of April 6, 1953, P. L. 3, provides that a chattel mortgage against a motor vehicle to which a certificate of title is issuable, shall not operate as notice of the lien unless and until a statement of the lien is noted on the certificate of title. The court stated, at page 269:

"The legislature made no exception in favor of chattel mortgages executed and effective in other states, where the motor vehicle embraced in such instrument is subsequently brought into this state and here sold for a valuable consideration and without notice. Since the Chattel Mortgage Act is a departure from the heretofore settled public policy of the state, we cannot extend its provisions farther than was clearly intended by the legislature. Had the legislature intended the proviso not to apply to motor vehicles mortgaged in other states and brought into Pennsylvania, it should, and no doubt would, have said so. In the absence of a clear intent by the legislature to the contrary, it must be held to have intended that the law applicable to motor vehicles brought into this state from foreign jurisdictions should remain as it was before the passage of the Act of 1945."

To the same effect see Rice Street Motors, to use v. Smith, 167 Pa. Superior Ct. 159; Seaboard Consumers Discount Company v. Landau's, Inc., 167 Pa. Superior Ct. 180; GFC Corp. v. Antrim, 2 D. & C. 2d 377, and Peoples Bank v. Neiman, 10 D. & C. 2d 125.

The case of Casterline v. General Motors Acceptance Corporation, 50 Luz. 42,* was decided after the effective date of the Uniform Commercial Code but before the effective date of the 1959 amendment, January 1, 1960. Under facts identical to those present here, the Luzerne County Court of Common Pleas determined that the Uniform Commercial Code protects an assignee of a conditional sales agreement made in New York as against a purchaser of the security in Pennsylvania for a period of four months, provided the security interest was perfected in New York before the security was brought into Pennsylvania. In that case as in the present case, the conditional sale con-

tract was not filed at the time the automobile was brought into Pennsylvania, but was filed within the 10-day statutory period allowed for filing. The court further held that since the security interest was filed within the 10-day period, it must be considered as having been perfected when the security was brought into Pennsylvania.

It is plaintiff's contention that since its security interest in the Chevrolet was perfected within the 10-day period allowed for filing in New York, it dated back to the day the security interest attached, i.e., the day the installment contract was executed, and that since it held a perfected security interest when the Chevrolet was brought into Pennsylvania, it had four months within which to perfect its interest here. This was done by filing a certified copy of the contract in Lancaster County on July 21, 1960. Under the ruling in the Casterline case, plaintiff's position is sound and if we accept the decision of that case as the law of Pennsylvania and if we determine that the amendment of 1959 to the Uniform Commercial Code did not alter or change the law, then we would be bound to hold that plaintiff's security interest is valid and binding on defendant and enter judgment in favor of plaintiff.

On the other hand, defendant argues that since the Chevrolet was brought into Pennsylvania and a Pennsylvania certificate of title was issued before plaintiff perfected its security interest in New York by filing its financing statement, the law of Pennsylvania is applicable and plaintiff did not have four months from the date the Chevrolet was brought here within which to perfect its security interest. It is further argued that section 9-103(4), which was added to the code after the Casterline case but before the transaction in this case, removes any doubt concering the status of a security interest in a motor vehicle.

The applicable portions of sections 9-103(3) of the Uniform Commercial Code provide:

"If personal property . . . is already subject to a security interest when it is brought into this state, the validity of the security interest in this state is to be determined by the law (including the conflict of laws rules) of the jurisdiction where the property was when the security interest attached. . . . If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected in this state for four months and also thereafter if within the four month period it is perfected in this state. . . ."

It is to be noted that in the first sentence quoted above, it speaks of property "subject to a security interest," while in the second sentence it speaks of a "perfected" security interest. It is factually true that plaintiff perfected its security interst by filing within the 10-day period allowed, but it is also true that plaintiff's security interest was not perfected when the Chevrolet was brought into Pennsylvania and a certificate of title obtained.

Under section 9-303(1), a security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken. Plaintiff's security interest attached on March 28, 1960, the day the installment contract was signed, but its security interest was not perfected until April 4, 1960, the day the financing statement was filed in the register's office of Kings County, New York. While the perfecting, so far as New York is concerned, dated back to March 28, 1960, the date the security interest attached, the automobile was brought into Pennsylvania before the actual perfection took place and, in our opinion, the code does not, under such circumstances, continue a perfected security interest for four months since there was no perfected security interest to continue. If the New York contract had been filed

before the automobile was brought into Pennsylvania or if the Pennsylvania certificate of title had not been issued until after the New York contract was filed, we would decide otherwise, for in either instance the security interest would have been perfected in New York before the automobile was brought into Pennsylvania and plaintiff would be protected by the code.

If plaintiff's security interest was not perfected when the Chevrolet was brought into Pennsylvania, and actually it was not, then the only way plaintiff could perfect its interest in Pennsylvania would be by having its lien or encumbrance noted on the certificate of title to the automobile. Section 203(a) of The Vehicle Code of April 29, 1959, P. L. 58, 75 PS § 203, requires that all liens and encumbrances against motor vehicles be noted on the certificate of title, and, under section 9-302(2) (b) of the Uniform Commercial Code, the notation must be made on the title certificate before the security interest can be perfected. Plaintiff failed to do this and, since defendant was an innocent purchaser without notice of plaintiff's claim, plaintiff did not have a perfected security interest in this State, and defendant took title to the Chevrolet clear of plaintiff's claim.

In our view of this case, the delay of plaintiff in filing its financing statement in New York from March 28, 1960, to April 4, 1960, made it possible for Ralph Lorna to bring the automobile to Pennsylvania, sell it and have the purchaser obtain a Pennsylvania certificate of title clear of encumbrances. For this delay, plaintiff must suffer rather than defendant who innocently purchased the Chevrolet without notice of plaintiff's claim. It, of course, follows that if New York had a system of motor vehicle title certificates and provision for noting encumbrances thereon, Lorna's fraud, in this case where he acted promptly before the perfecting of plaintiff's security interest

or even if the same procedure were followed after perfecting a security interest, could not happen.

Section 9-103 (4) of the Uniform Commercial Code was added to the code by the amendment of 1959 and provides:

"Notwithstanding subsections (2) and (3), if personal property is covered by a certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate." The effect of this amendment, since the motor vehicle in question was covered by a certificate of title issued in this State, is that the law of Pennsylvania applies in determining the perfection of the security interest. This is true notwithstanding the provisions of subsection (3) of section 9-103. Thus, even if the Casterline decision is correct under subsection (3), the law has been changed by the addition of subsection (4). Plaintiff did not comply with the law of Pennsylvania by having its lien noted on the title to the Chevrolet and, so far as defendant is concerned, it acquired title free of any claim on the part of plaintiff. Just as was said about the Chattel Mortgage Act of June 1, 1945 in the Sheldon case, the Uniform Commercial Code— Secured Transactions is in derogation of the common law and must not be extended beyond the clear intention of the legislature.

And now, April 7, 1961, it is ordered, adjudged and decreed that defendant, Manheim Auto Auction, Inc., has the right to possession of the 1960 Chevrolet two-door convertible bearing manufacturer's serial no. 01867T-154244 or, in the alternative, has the right to recover from use-plaintiff, General Motors Acceptance Corporation, the value of said automobile which

has been fixed by the parties to this action at the sum of $2,300. No special damages have been claimed or agreed upon and none are awarded.