UNIVERSAL C.I.T. CREDIT CORPORATION, A FOREIGN CORPORATION, APPELLANT, v. J. H. WAGNER, dba WAGNER MOTOR CO., RESPONDENT.

No. 3934

December 19, 1956                    305 P.2d 363

(Petition for rehearing denied February 8, 1957.)

*Zenoff, Magleby and Manzonie*, of Las Vegas, for Appellant.

*Bonner and Rittenhouse*, of Las Vegas, for Respondent.

**OPINION**

By the Court, EATHER, J.:

Action to determine ownership of automobile.

Wagner, respondent herein, the local purchaser of the car, sued the finance company to whom the foreign dealer

had assigned the conditional sales contract. Judgment was rendered for plaintiff, and defendant appeals. Neither the foreign dealer nor the person to whom he sold the car was a party to the action.

September 13, 1954, Purdy Motors, Inc., of Frankfort, Kentucky, sold the car to one Morrison, on a title retaining conditional sales contract, for $3,978.88, with $1,100 paid down by cash or trade-in, leaving a balance of $2,978.88. Embodied in the contract itself is assignment to Universal C.I.T. Credit Corporation, appellant herein, reciting that all payments must be made to such assignee and that Purdy was not an agent of C.I.T.

September 18, 1954, this contract was duly filed per Kentucky law in the county clerk's office.

September 20, 1954, two days after such filing, Purdy, without knowledge of C.I.T., gave Morrison a bill of sale of the car stamped "Paid."

January 4, 1955, the deputy clerk in Kentucky issued what appears to be a 1955 transfer and registration certificate showing transfer from Purdy Motors to Morrison of the car in question. The form of such certificate contains no place for entry of any showing of the holder of any lien against the vehicle or of any person holding legal title or other claim. Apparently the Nevada form of official certificate indicating such outstanding claim, lien or ownership is not used in Kentucky, and nothing in the record suggests any requirement for such indication.

Armed with such certificate and with Purdy's bill of sale marked "Paid," Morrison came to Las Vegas on March 6, 1955 and arranged to sell the car to Wagner for $1,850. He certified that there were no liens against the car and exhibited his operator's license. Wagner paid him $1,200 down and on the same date wrote airmail to the county clerk at Frankfort, Kentucky, requesting a rush airmail reply in enclosed envelope concerning the existence of any liens, etc. He testified: "I knew if there were any liens it had to be filed in the county where he resided, so I wrote the letter to the county clerk at Frankfort, Kentucky * * *." Two days later, March 8, he

phoned the county clerk at Frankfort, who advised that the records were being checked, and that afternoon he received a wire advising there was a $2,000 unpaid mortgage against the car. He wired for further details, which he then received.

The court found: "7. That the vendor (Purdy Motors) and the defendant (C.I.T., the assignee) were jointly and severally negligent in the handling of said sale through which negligence the plaintiff herein (Wagner) was led to believe the said automobile was free and clear of encumbrances. 8. That the vendor's negligence is chargeable to and against vendor's assignee." As a conclusion the court found "that the defendant is estopped from asserting the lien against plaintiff to the extent plaintiff was induced to part with money as part payment of said automobile," and that plaintiff was entitled to the automobile upon payment to defendant of $650 or, in the alternative, that defendant might have the automobile upon payment to plaintiff of the $1,200 plus $434.78, costs, damage, expense and attorney fees.

It would seem that the court's finding is based entirely upon the conception that after Purdy assigned its title retaining contract to C.I.T. and after C.I.T. had recorded the same in accordance with Kentucky law, Purdy could thereafter, by its independent and unilateral act, in which C.I.T. did not join and of which it had no notice or knowledge of any kind, affect C.I.T.'s legal rights, claims to ownership, etc.

This appears to have followed plaintiff's brief in the district court which asserted that C.I.T. was estopped "because of its own negligence *in allowing Morrison* to have possession of a bill of sale (executed by Purdy Motors) showing no liens except to vendor and marked paid by vendor." In his briefs and oral argument in this court, respondent enlarges upon this contention by the assertion that C.I.T.'s negligence in permitting Purdy to give Morrison a bill of sale marked "Paid" estopped C.I.T. from asserting its rights under its assigned title

retaining contract. Respondent has made no suggestion as to how appellant could have accomplished this.

1. The validity of respondent's lien or its title under the assigned title retaining contract, admittedly properly recorded in accordance with the laws of Kentucky, was notice thereof to the world, even though the car was taken into another state. Vincent v. General Motors Acceptance Corporation (Fla.1954), 75 So.2d. 778; Ashland Finance Company v. Mollet (Ky.1934), 252 Ky. 491, 67 S.W.2d 717; Finance Service Co. v. Kelly (Mo.App. 1921), 235 S.W. 146; Anno. in 13 A.L.R. 2d series, 1312, 1329.

2. As against respondent's claim of estoppel, there is absent the element that Wagner, in making the $1,200 payment, relied upon the documents submitted by Morrison. Wagner frankly admits that he knew that any liens against the title would be on file at Frankfort, Kentucky, and he, accordingly, wrote the county clerk there. He apparently concluded that he would not make the remaining payment of $650 to Morrison until he found that there were no liens recorded, but was willing to take his chances in making the first payment of $1,200. In doing this, he relied upon Morrison's assurance and on Purdy's bill of sale marked "Paid." Purdy could well have been paid for the car with proceeds of a loan or other financing method whereunder a third person, in this case C.I.T., obtained a valid lien. Wagner evidenced a knowledge of such possible situation.

3. That there is an equitable estoppel against C.I.T.'s assertion of its lien because it was negligent "in allowing Morrison to have possession of a bill of sale showing no liens except to vendor and marked paid by vendor" is entirely without support. When a failure to act or a silent standing by is relied upon to create an estoppel,

the same must occur under such circumstances that there is not only an opportunity, but also an apparent duty to act or speak. Finance Service Corporation v. Kelly, (Mo. App.1921), 235 S.W. 146; Anno. in 13 A.L.R.2d 1312, 1329. There is an entire absence of showing of such opportunity or duty.

Respondent has succeeded to Morrison's equity in the automobile. Subject only to such equity, title to the automobile remains in appellant.

The judgment is reversed with costs, and the case remanded to the district court with instructions to enter judgment for defendant accordingly.

MERRILL, C. J., and BADT, J., concur.