FERRIS EDWARD BRAWNER, ALSO KNOWN AS TEX BRAWNER, ALSO KNOWN AS TEX BRAUNER, APPELLANT, v. ELKHORN PRODUCTION CREDIT ASSOCIATION, AN AGRICULTURAL CREDIT CO-OPERATIVE ORGANIZED AND EXISTING UNDER AND BY VIRTUE OF THE FEDERAL FARM CREDIT ACT OF 1933, AS AMENDED, RESPONDENT.

No. 4530

November 26, 1962                    376 P.2d 426

484

*Jones, Wiener & Jones* and *John W. Hunt,* of Las Vegas, for Appellant.

*Joseph L. Ward,* of Las Vegas, for Respondent.

## OPINION

By the Court, BADT, C. J.:

The sole question presented by this appeal is whether the lien of a chattel mortgage on an automobile, executed and recorded in Wisconsin in full compliance with the statutes of that state has precedence over the rights of a purchaser in Nevada who bought the automobile from the mortgagor for value and without knowledge of the chattel mortgage after the mortgagor, in violation of the terms of the mortgage, had driven the vehicle to this state.

The trial court properly answered this question in the affirmative.

The case was tried on the following agreed facts: In Wisconsin one Varga purchased a 1960 Chevrolet

station wagon from Lakeside Chevrolet Sales, receiving from it a car invoice marked "paid." Thereafter Varga applied for and received a certificate of ownership or "title" upon the form commonly used in Wisconsin, the said "title" reflecting that Varga had title to the automobile free and clear of any liens or encumbrances. At about the time of the sale Elkhorn loaned Varga $3,457, taking as security therefor his note and chattel mortgage upon the automobile, which chattel mortgage was filed in the office of the registrar of deeds in Wisconsin. Thereafter Varga brought the vehicle to Nevada where he sold it to Fremont Hotel, Inc., delivering possession of the automobile and the signed "title" to the purchaser. Fremont Hotel, Inc., sold and delivered possession of the vehicle to appellant Brawner for $2,000. Brawner had no actual notice of any lien or encumbrance on the automobile and none was given to the state authorities before the filing of the complaint herein.

Respondent commenced this action in replevin after default in payment of the note and mortgage and after violation of the covenants of the chattel mortgage prohibiting removal of the automobile from the state. In the course of the litigation the parties stipulated that the automobile in question might be sold for the sum of $1,900. By the findings and judgment the court awarded this sum to respondent.

There is a virtual unanimity of authority throughout the United States in support of the trial court's judgment awarding priority to respondent's foreign chattel mortgage. We cite a few of these authorities: Universal C.I.T. Credit Corporation v. Wagner, 72 Nev. 337, 305 P.2d 363; Isaacs v. Mack Motor Truck Corporation, 50 Wash.2d 325, 311 P.2d 663; Deposit Guaranty State Bank v. Hessell Motor Car Co., 90 Cal.App. 428, 265 P. 954; General Credit Corp. v. Rohde, 122 Conn. 100, 187 A. 676; Handley v. Harris, 48 Kan. 606, 29 P. 1145, 17 L.R.A. 703; Ballard v. Great Western M & M Co., 39 W. Va. 394, 19 S.E. 510; Mosko v. Matthews, 87 Colo 55, 284 P. 1021; Metro-Plan, Inc. v. Kotcher-Turner, Inc., 296 Mich. 400, 296 N.W. 304; Casterline v. General Motors

Acceptance Corp., 195 Pa.Super. 344, 171 A.2d 813; 2 Beale, Conflict of Laws, 992 (1935); Goodrich, Conflict of Laws, 486 (1949); Restatement, Conflict of Laws, sec. 265 (1934).

Appellant, while recognizing the general rule, asserts it to be inapplicable in the present case, and in support of his contention relies on Dissing v. Jones, 85 Ariz. 139, 333 P.2d 725. There a Texas certificate of title, endorsed in blank by the Texas owner, had been delivered to an Oklahoma car dealer who sold the car to one Moore on a title retaining contract and assigned the certificate to him, but did not endorse thereon, *as required by the Oklahoma statute,* a statement of his lien. The car was subsequently taken to Arizona and there sold to an innocent purchaser who relied on the title certificate indicating that there were no liens on the car. The Arizona court held that under such circumstances the general rule giving priority to a foreign lien, if properly recorded in the foreign jurisdiction, was not applicable; that the conditional vendor by failing to comply with the Oklahoma statutes, requiring notation of his lien on the title certificate, was not only negligent but also guilty of unlawful conduct in that regard; that such negligent and unlawful conduct was a proper basis for predicating an estoppel against asserting any interest in the car; and therefore the rights of the resident purchaser in the car were superior to those of the Oklahoma conditional vendor.

Appellant urges that the ruling in the Dissing case is here applicable, since the title certificate covering the automobile involved in the instant case does not contain any statement of respondent's lien thereon. The court's decision in Dissing was based upon the conditional vendor's violation of the law of the lex loci. In determining whether the respondent here complied with the law of Wisconsin, the case of Commercial Credit Corp. v. Schneider, 265 Wis. 264, 61 N.W.2d 499, is controlling. In the Schneider case the plaintiff, assignee of the conditional vendor, recorded the title-retaining contract as required by Wisconsin law, but never had his lien listed on the title certificate issued to the conditional

vendee. The automobile covered by the contract was thereafter sold to the defendant who was without actual notice of the plaintiff's lien.

The court held that the plaintiff had, by properly recording his lien, done everything necessary to protect such interest, that having his lien noted on the title certificate was not required by law, and concluded: "It follows that where the owner of a conditional sales contract has recorded his lien under and pursuant to ch. 122, there can be no innocent purchaser whose rights supersede the contract, and that in the case at bar the automobile covered by the contract is subject to the lien of respondent." It is thus apparent that respondent had, under the law of Wisconsin, done everything necessary to protect his lien in that state, and was not guilty of any unlawful conduct. The Dissing case is, therefore, clearly distinguishable from the case at bar. Indeed in Universal C.I.T. Credit Corporation v. Wagner, 72 Nev. 337, 305 P.2d 363, under a somewhat similar state of facts, this court said: "When a failure to act or a silent standing by is relied upon to create an estoppel, the same must occur under such circumstances that there is not only an opportunity, but also an apparent duty to act or speak." Respondent's compliance with the law of the lex loci negates the proposition that any duty to act or speak was owed to appellant, and there is, therefore, no basis for raising an estoppel. Metro-Plan, Inc. v. Kotcher-Turner, Inc., 296 Mich. 400, 296 N.W. 304.

With reference to the fact that a number of the cases relying upon the general rule have based their conclusions upon comity, appellant has cited cases to the effect that comity should not prevail where the statute of the foreign state is contrary to the public policy of this state. The public policy of Nevada is said to result from NRS 482.425, a section of our *motor vehicle licensing and registration statute,* which requires the endorsement on the certificate of ownership to be deposited with the motor vehicle department in order to be valid against subsequent purchasers or encumbrancers.

Concededly, the recording and registration statutes of this state are different from those of Wisconsin. This

variance between the law of the lex fori and lex loci is not, however, standing alone, sufficient to establish a conflict in policy. This state could by appropriate legislation, decline to enforce foreign liens unless recorded locally. Mercantile Acceptance Co. v. Frank, 203 Cal. 483, 265 P. 190, 57 A.L.R. 696. However, in absence of legislation requiring local recordation, recognition of foreign liens is not contrary to the settled policy of this state. Universal C.I.T. Credit Corporation v. Wagner, 72 Nev. 337, 305 P.2d 363; Mosko v. Matthews, 87 Colo. 55, 284 P. 1021.

Appellant further relies, in support of his theory that judicial comity may not prevail where the foreign law upon which reliance is made conflicts with the policy of the states in which it is asserted, on First National Bank of Jamestown v. Sheldon, 161 Pa.Super. 265, 54 A.2d 61. This is no longer the law in Pennsylvania. Casterline v. General Motors Acceptance Corp., 195 Pa.Super. 344, 171 A.2d 813. Subsequently to the decision in the Sheldon case, Pennsylvania adopted the Uniform Commercial Code and geared its opinion in the Casterline case to that code. The code thus adopted provided for the superiority of a foreign chattel mortgage recorded in the state where the transaction took place, even though not locally recorded, and even though the Pennsylvania *Vehicle Code* still required the notation of security interests in motor vehicles on the *title certificate.* In the Casterline case the conflict was between a New York chattel mortgage (requiring only recordation) and a purchaser without knowledge in Pennsylvania. There the court said: "Consequently the plaintiffs [the Pennsylvania purchasers without notice] are not aided by our [decision] in First National Bank of Jamestown, N. Y. v. Sheldon, 1947, 161 Pa.Super. 265, 54 A.2d 61 * * * decided before the effective date of the Uniform Commercial Code. The conclusion here reached under the Uniform Commercial Code is in accord with the rule in the majority of jurisdictions without any statutory provision such as § 9–103 (3). Bank of Atlanta v. Fretz, 1950, 148 Tex. 551, 226 S.W.2d 843; 14 C.J.S. Chattel Mortgages § 15, p. 607, n. 6.

Pennsylvania, which was almost alone in the minority before the code, (14 C.J.S. Chattel Mortgages § 15, p. 609, n. 19), has adopted the majority rule legislatively in § 9–103 (3) of the code. The provisions of the Commercial Code on this point override our earlier decisions."

Respondent's perfection of his title in Wisconsin disposes of all appellant's citations of error.

The judgment and the order denying new trial are affirmed with costs.

MCNAMEE and THOMPSON, JJ., concur.