486 P.2d 992

KTVB, INC., a corporation, and Boise Valley Broadcasters, Inc., a corporation, Plaintiffs-Appellants,

v.

BOISE CITY, a municipal corporation, et al., Defendants-Respondents.

No. 10602.

Supreme Court of Idaho.

June 30, 1971.

Hawley, Troxell, Ennis & Hawley, Boise, for plaintiffs-appellant.

Elam, Burke, Jeppesen, Evans & Boyd, Boise, for respondent, General Communications & Entertainment Co., Inc.

Elbert Gass, City Atty., Boise, for respondents, Boise City and Boise City Council members.

McQUADE, Chief Justice.

This case comes before this Court after summary judgment was granted by the trial court. Issues of standing in court and estoppel are presented.

The focus of this controversy is a cable television franchise in Boise. Some time in 1965, the two existing television stations in Boise, KBOI and KTVB (plaintiffs and appellants herein) began their efforts to secure a cable television franchise for themselves in Boise and several surrounding communities. These efforts continued sporadically up to August of 1968, when fourteen cities in the Boise area, including Boise, formed a committee to draft specifications for bids for a cable television franchise. Each of the participating cities sent two members of the city government as their representatives on the committee.

The committee formulated specifications and advertised for bids preparatory to granting cable television franchises by the participating cities. Nine companies, in-

cluding a joint venture formed by appellants and one other company, submitted bids which were opened on January 28, 1969. Appellants, as proponents of their joint venture bid, engaged in extensive efforts to convince the committee that the joint venture should be awarded the franchise. These efforts included a violation of the committee's rules governing consideration of the bids, by passing out printed copies of the joint venture's bid to certain members of the committee. The committee previously had determined that fairness would best be served by keeping the identity of the various bidders secret, referring among themselves to the bids submitted by numbers assigned thereto rather than by name of the bidder.

The executive committee of the general cable television committee recommended three applicants, by number only, to the general committee. Appellants' joint venture was not one of the three. Appellants' joint venture learned of this development, and attempted to gain further consideration of their bid by contacting certain members of the general committee. On February 13, 1969, the committee chose respondent General Communications & Entertainment Co., Inc. (GenCoe) as the recipient of the franchise. Thereafter, it remained for the participating cities to consider the committee's recommendation and, if approved, enact franchise ordinances. During the period between the recommendation of the committee on February 13, and the final adoption of the franchise ordinance involved in this action, appellants continued their efforts to secure the franchise for themselves. These efforts included the placing of full page newspaper advertisements, distribution of fly sheets, obtaining a private hearing before the Boise City Council, and participation in the public hearing on the question of granting the franchise.

After the public hearing on April 14, 1969, the Boise City Council voted four to two in favor of awarding to GenCoe a franchise for cable television, within the City of Boise. A contract was thereafter entered into between GenCoe and Boise City. From the record, it does not appear that appellants offered objections to the proceedings to award the franchise other than initiating this action, except for objections to the action of the general committee and later the Boise City Council in not considering the joint venture proposal along with the three finalist bids selected by the executive committee. In each instance, these objections were met by further consideration of appellants' bid. Appellants, after the franchise was awarded and the contract between respondents was executed brought the action resulting in this appeal.

The trial court granted respondents' motions for summary judgment on the ground appellants did not have standing to bring this action and on the ground that appellants, having participated in and acquiesced in the procedures leading to the award of the franchise, were thereby estopped from challenging that award. Appellants bring this appeal from the grant of summary judgment.

Appellants assert that the City acted illegally in entering into and "being bound by" the agreement establishing the cable television committee, that the franchise award is illegal and invalid because the required competitive bidding procedure was not followed (citing I.C. § 50–341), and that the award is invalid because the individual members of the Boise City Council did not investigate or study any of the bid proposals submitted to them prior to adopting the ordinance. Appellants also contend that the franchise ordinance is invalid by reason of the pecuniary interest in the contract of councilman Frazier, who voted for the award to GenCoe (without whose vote it is urged, there were insufficient votes to enact the ordinance),[1] that the ordinance is

---

1. Appellants, in support of this contention, cite I.C. §§ 50–329 and 59–201. I.C. § 50–329 provides in part "* * * No franchise shall be created or granted by the city council otherwise than by ordinance, and the passage of any such ordi-

invalid as a regulation in an area of interstate commerce pre-empted by the federal government and as an unreasonable burden upon interstate commerce, that the franchise ordinance is an unlawful intrusion upon powers reserved to the State of Idaho, and that the ordinance is invalid because the cable television committee allowed GenCoe to materially alter its bid proposal after the closing date set for the receipt of bids. These contentions must be examined in the light of appellants' prior conduct in relation to the bidding and award processes.

It is contended by respondents, and the trial court concluded, that appellants are estopped from challenging the franchise award under the equitable doctrine of "quasi estoppel." This Court has recognized that doctrine in the case of Clontz v. Fortner,[2] wherein we quoted with approval the following definition:

> " 'The term "quasi estoppel" has been applied to certain legal bars which are in some respects analogous to estoppel in pais and which have the same practical operation as an estoppel in pais, but which nevertheless differ from that form of estoppel in essential particulars. Thus, it has been held that no concealment or misrepresentation of existing facts on the one side, no ignorance or reliance on the other, is a necessary ingredient.

> "The doctrine classified as quasi estoppel has its basis in election, ratification, affirmance, acquiescence, or acceptance of benefits; and the principle precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by him. The doctrine applies where it would be unconscionable to allow a person to maintain a position inconsistent with one in which he acquiesced, or of which he accepted a benefit.' "

Further definition and application of this equitable doctrine is found in the case of Godoy v. Hawaii,[3] where it is stated at pages 82 and 83,

> "The estoppel claimed by appellant and recognized by the above-mentioned cases is that form of estoppel *in pais* called by text-writers and known to jurists as *quasi* estoppel. This class of estoppel is sometimes expressed in the language of the rule or maxim that one cannot blow both hot and cold. It is based upon the broad equitable principle which courts recognize, that a person, with full knowledge of the facts, shall not be permitted to act in a manner inconsistent with his former position or conduct to the injury of another. To constitute this sort of estoppel the act of the party against whom the estoppel is sought must have gained some advantage for himself or produced some disadvantage to another; or the person invoking the estoppel must have been induced to change his position, or by reason thereof the rights of other parties must have intervened. [Quoting from Yuen v. London Guar. & Acc. Co. et al., 40 Haw. 213, 229–230].

> \* \* \* \* \* \*

> "The option lay with the appellee to conform to the law and to secure a certificate of convenience and necessity with its attendant benefits or insist upon the invalidity of the statute and stand upon the constitutional and statutory rights and privileges which he believed the statute invaded. He chose the former course. By such voluntary acceptance of benefit he is now estopped from assailing the validity of the statute. [Quoting from Wong v. Public Util. Comm., 33 Haw. 813 at 816]."

nance shall require the affirmative vote of one-half (½) plus one (1) of the members of the full council."

I.C. § 59–201 provides: "Members of the legislature, state, county, city, district and precinct officers, must not be interested in any contract made by them in their official capacity, or by any body or board of which they are members."

2. 88 Idaho 355, 364–365, 399 P.2d 949, 954 (1965).

3. 44 Hawaii 312, 354 P.2d 78 (1960).

While appellants may not have been required to forego bidding on the franchise in order to raise the objections to the franchise that they now make, it is clear from *Godoy* that they at least were required to make some objection to the various deficiencies which they now claim existed in the bidding and granting processes, rather than to intimate full approval by their acquiescent conduct while harboring serious reservations about the processes.[4]

■ The requirements for proper application of quasi estoppel are, then, that the person against whom it is sought to be applied has previously taken an inconsistent position, with knowledge of the facts and his rights, to the detriment of the person seeking application of the doctrine. It is therefore, incumbent upon this Court to consider the appellants' assertions of irregularity of the procedure and illegality of the franchise in light of appellants' previous position in the award process.

■ Appellants' prior conduct can only be characterized as full acquiescence in the bidding and award process they now challenge. Appellants' participation in the bidding and award process, guided consistently by competent legal counsel, was clearly aimed at securing the franchise, within the framework of the process they now challenge, for their proposed joint venture. It seems clear that it is only the end result of the process, and not the process itself, which prompts appellants' allegations of illegality at this time. No protest was made by appellants when the several city governments banded together to form the Treasure Valley Cable Television Committee to investigate the award of a franchise and recommend a franchisee, nor was any objection lodged against the prospect of the various cities granting franchises. Rather, appellants vigorously sought the proposed franchise for themselves, through the committee. Indeed, appellants' efforts to secure committee backing for their bid involved extensive contact and personal solicitation of the support of committee members by representatives of appellants. Throughout the bidding process, appellants sought and often received consideration of their bid beyond that available to the other bidders. Objection that appropriate competitive bidding procedure was not being adhered to was not made. When the recommendation of the committee was brought before the Boise City Council for consideration, appellants intensified their campaign to convince the Council, not that improper procedures had been followed, but that appellants should be awarded the franchise on the basis of the merits of their bid. On the basis of this record, the trial court did not err in holding appellants estopped from pursuing this collateral attack upon grant of the franchise.

Appellants cite a number of cases which, they argue, make the doctrine of quasi estoppel inapplicable in this case. We do not find these authorities persuasive on the point urged by appellants, bearing in mind that the essence of the proper application of the doctrine of quasi estoppel is the focus of the Court's attention upon the specific facts and circumstances of the case at bar.

Appellants first contend that a person is not estopped from attacking municipal action merely because he participated in or encouraged such action. We do not hold that "mere" participation in or encouragement of municipal action per se estops a later attack upon the municipal action. Nor does either case cited under this proposition by appellants persuade us that appellants' activities cannot give rise to estoppel. In Barnes v. Clark,[5] the plaintiffs petitioned to have a portion of a street vacated, and part of the street was vacated. Some time later, a second petition was presented to the city to have the remainder of the street vacated. This petition was also successful, and plaintiffs brought suit to enjoin vacation of the second portion of the street. The Oklahoma Court refused

4. *See also*, In re Hemshorn's Estate, 184 Or. 364, 198 P.2d 597, 602 (1948).

5. 364 P.2d 693 (Okl.1961).

to recognize estoppel as a defense to the plaintiffs' action, because plaintiffs had not signed the second petition, and it had been some time since they signed the first. The Oklahoma Court was holding, in effect, that the inconsistent prior behavior was too remote from the act sought to be enjoined. The case of Gay Johnson's Wyoming Automotive Service Co. v. City of Cheyenne [6] is also cited under this general proposition. In this case, plaintiff requested certain streets be vacated and sold, and the City of Cheyenne proceeded to do so. However, another party entered the high bid to purchase the vacated street property. Plaintiff brought suit to enjoin the sale, and the Wyoming Court denied the availability of the defense of estoppel to the intervening purchaser of the street property. The case is distinguishable on several grounds. The City of Cheyenne did not plead the defense of estoppel, and indeed indicated it wished to argue the merits of the controversy—the legality of the sale of vacated street property. Respondents in the case before us specifically enumerated estoppel as a basis for summary judgment. The Wyoming Court, in the Gay Johnson case, found that the late attack worked no hardship upon anyone. Finally, after rehearing, the Wyoming Court relied upon the equitable maxim that estoppel is only properly granted for protection of a right, and not for creation of a right. The City of Cheyenne had no title in the property to transfer, the Court said, and therefore estoppel was being relied upon by the intervenor to create a legal interest in the City.[7] Thus, the particular facts of the case and the nature of estoppel as a defense made it inapplicable. The Wyoming Supreme Court did not hold that estoppel never arises from participation in or encouragement of municipal action. The Court stated, that estoppel *ordinarily* does not result from acquiescence in the violation of a law. Appellants seize upon this particular statement in the case as supportive of the next proposition asserted, viz., that estoppel does not result from conforming to an invalid administrative action or acquiescing in the violation of a law, to make application of estoppel in the case before us inappropriate. Precisely what the Wyoming Court in the *Gay Johnson* case [8] had in mind when making the statement relied upon by appellants is not clear. The use of the word "ordinarily," in stating that acquiescence in violation of the law does not *ordinarily* result in estoppel, does make it clear that acquiescence in a violation of the law in some circumstances will result in application of estoppel. In the case of Continental Oil Company v. McNair Realty Co.[9] the Montana Supreme Court estopped the plaintiffs from asserting an alleged illegal exercise of power by a lower court because of plaintiff's participation in the earlier action. The correct application of the rule cited from the *Gay Johnson* case is thoroughly discussed in Godoy v. County of Hawaii.[10] The Court in that case states:

"What the rule as intended to cover and prevent is the use of estoppel in aid of the enforcement of an act or transaction which is directly prohibited by law, e. g., where the allowance of an estoppel would validate an act affirmatively made illegal by statute or would permit the enforcement of an executory contract in violation of a penal law. * * * However, it is not a sufficient ground * * * that authority to make or impose a charge was lacking." [Citations omitted] [11]

---

6. 367 P.2d 787, aff'd on rehearing, 369 P. 2d 863 (Wyo., 1962).

7. Gay Johnson's Automotive Service Co. v. City of Cheyenne, *supra*, note 6.

8. *Supra*, note 6.

9. 137 Mont. 410, 353 P.2d 100 (1960).

10. *Supra*, note 3.

11. Godoy v. County of Hawaii, *supra*, note 3, at 84. *See also* Lloyd Crystal Post No. 20 v. Jefferson County, 72 Idaho 158, 237 P.2d 348 (1951).

The cases of Functional Music, Inc. v. F. C.C.,[12] Thrift Wash, Inc. v. O'Connell,[13] and State ex rel. Greenberg v. Dade County,[14] all cited by appellants as supportive of the contention under discussion, are distinguishable on their facts, and close examination shows they are not contrary to the general rule as explained in the *Godoy* case.[15] We therefore find no bar in these cited cases to the application of the doctrine of quasi estoppel to appellants on the facts of this case.

■ Appellants contend that a mere acquiescence where there is no duty to speak does not raise an estoppel, and further that there was no duty to speak in this instance. Appellants cite 31 C.J.S. Estoppel § 114, pp. 593–594 in support of this contention. However, it is there said that,

"Where nonaction or passivity is relied on to create an estoppel, it must appear that the party to be estopped was under a duty to act under the circumstances, or, as is sometimes declared, *was bound in equity and good conscience actively to evidence his intention not to be bound by the transaction.*" [Emphasis added]

In the Idaho case of Neer v. McFarland,[16] plaintiff asserted certain slots were contemplated in the foundation defendant was building as part performance of a contract between plaintiff and defendant. This Court held plaintiff was estopped from asserting the slots were contemplated by the parties, because plaintiff acquiesced in defendant's construction of the foundation without the slots when he had ample opportunity to tell defendant of the alleged error. The only duty to speak was the duty imposed by the requirements of good conscience and equity. There may be an equitable duty to speak, if subsequent maintenance of a position inconsistent with

that acquiesced in would lead to unconscionable results. The cases cited by appellants are not inconsistent with this construction of the rule. In the case of Universal C.I.T. Credit Corp. v. Wagner,[17] the Nevada Supreme Court denied the availability of estoppel because there was no duty to speak. In that case the defendant credit corporation as assignee of a lien on a car, had recorded the lien and done all that could reasonably be expected to protect its lien and give notice thereof. The assignor of the lien had, after the assignment, given a bill of sale to the purchaser of the car. The purchaser then sold the car to plaintiff. Plaintiff tried to assert estoppel against the defendant's claim on the car. The Court said there had to be some apparent duty to act or speak before defendant's silence would give rise to estoppel. There was no unfairness, no trace of unconscionable conduct, in the defendant's posture. There could not have been said to be an equitable duty to speak on these facts.

Finally, appellants contend that an unsuccessful bidder is not estopped from attacking a franchise or contract merely because of his status as unsuccessful bidder, and urge us therefore not to apply estoppel against them as unsuccessful bidders. There is, of course, nothing inherent in a party's status as an unsuccessful bidder that gives rise to the defense of estoppel against him should he attack the franchise bid upon. We have stressed the application of estoppel turns upon the particular facts before the Court. The case in which a bidder discovers some fatal defect in the bidding process after the award of the franchise or contract[18] is far different from the case in which a bidder seeks the award and all the while harbors knowledge of an alleged defect upon the basis of

12. 107 U.S.App.D.C. 34, 274 F.2d 543 (1958).

13. 11 Misc.2d 318, 174 N.Y.S.2d 70 (1958).

14. 120 So.2d 625 (Fla.App.1960).

15. *Supra*, note 3, at 84.

16. 77 Idaho 286, 291 P.2d 293 (1955).

17. 72 Nev. 337, 305 P.2d 363 (Nev., 1957).

18. *See* Baldwin-Lima-Hamilton Corp. v. Superior Court, 208 Cal.App.2d 803, 25 Cal.Rptr. 798 (1962).

which he may attack the award if he is unsuccessful in his bid.[19]

The cases of Macon Ambulance Service, Inc. v. Snow Properties, Inc.[20] and Old Town Development Corp. v. Urban Renewal Agency,[21] cited by appellants, offer little help. The *Macon Ambulance Service* case was decided on the basis of controlling Georgia statutes. In the *Old Town* case, the plaintiff (unsuccessful bidder) filed specific objections prior to the award of the contract to the procedure employed. The issue of equitable estoppel was not raised, nor ruled upon by the Court.

One generalization, from the cases cited by appellants on the issue of estoppel, which seems inescapable to us, is that these cases turn upon their individual fact situations.

On the basis of the facts in this case the appellants are estopped from attacking the ordinance and franchise on the grounds stated in their amended complaint. We need not discuss the assignments of error by appellants regarding the issue of standing to sue, since the summary judgment is affirmed on the basis of quasi estoppel.

The judgment of the district court is affirmed. Costs to respondents.

McFADDEN, DONALDSON, and SPEAR, JJ., and SCOGGIN, District Judge, concur.

19. *See* Day v. City of Beatrice, 169 Neb. 858, 101 N.W.2d 481 (1960).

20. 218 Ga. 262, 127 S.E.2d 598 (1962).

21. 249 Cal.App.2d 313, 57 Cal.Rptr. 426 (1967).