26 P.3d 1225

**ADA COUNTY HIGHWAY DISTRICT, a body politic corporate of the State of Idaho, Plaintiff–Respondent,**

v.

**Sharon L. SHARP, Defendant–Appellant.**

No. 26237.

Court of Appeals of Idaho.

April 17, 2001.

Review Denied July, 17, 2001.

Davison, Copple, Copple, Copple & Lud-wig, Boise, for appellant.  Heather Anne Cunningham argued.

Eberle, Berlin, Kading, Turnbow & McKlveen, Chtd., Boise, for respondent. Warren E. Jones argued.

SCHWARTZMAN, Chief Judge.

Sharon L. Sharp appeals from the district court's judgment deciding that an order of condemnation from the Ada County Highway District (ACHD) does not define the nature and scope of a take and that her property suffered no severance damages.  Sharp also appeals from the district court's denial of her claim for attorney fees and costs.  We affirm.

## I.

## FACTS AND PROCEDURE

The ACHD decided to widen a portion of Eagle Road between the Eagle Bypass and State Street in Eagle, Idaho.  Sharp owns three contiguous lots on the corner of Eagle Road and Aikens Street.  There are three homes on these lots.  Two of the three lots border Eagle Road and have access drive-ways to Eagle Road. The third lot has an access driveway to Aikens Street.

It is undisputed that the highest and best use of these three lots is commercial and not residential.  It is further undisputed that the then-existing residential access driveways could not be implemented for commercial purposes.  The ACHD prepared plans for the widening project that provided Sharp with her current residential access driveways onto Eagle Road. During subsequent negoti-ations, Sharp expressed her concern that ACHD was taking all her rights to future commercial access to Eagle Road, thus great-ly devaluing her property.  Dick Brown of the ACHD memorialized Sharp's concerns in a memorandum stating:

> She wants some access to Eagle, other than the one presently in existence on the corner of Aikens and Eagle Road.
>
> Answer—She may have the access to Ea-gle Road as it now exists.  Once the prop-erty sells, this access will be taken away. Franz Witte said that her loss of access to Eagle Road would devalue her property. The property was valued at its present condition.  I said I would ask if she could have another access to Eagle Road, other than the access now on the corner.

Thereafter, Sharp asserts she was told that she could only have the existing residential access to and from Eagle Road after the widening.

The ACHD offered Sharp $16,258 for a small slice of land they sought to take, but Sharp declined that offer.  On February 19, 1997, ACHD entered an Order of Condemna-tion regarding a portion of Sharp's property bordering Eagle Road. The order included this statement:

> [A]ll rights of access to, from, and between the right-of-way of the public way and all

of the contiguous remaining real property of the named owners, or reputed owners, shall be extinguished and prohibited except for access, if any, in the project hereinabove described.

On March 6, 1997, ACHD filed its complaint for condemnation, with the order of condemnation attached. The complaint stated:

ACHD, by this action, seeks to (i) take and condemn a portion of the Property right-of-way, and (ii) obtain a permanent easement on an additional portion of the Property, for a public purpose, namely, alignment, reconstruction, and widening of the North Eagle Road from the Eagle By-Pass to State Street.

The complaint made no mention of condemning access rights to Eagle Road.

Sharp thereafter hired experts to determine the value of her property both before and after the taking and to estimate just compensation. Mark Richey was hired in July and determined that the loss of commercial access rights to Eagle Road substantially impacted the value of her property and determined that just compensation due was $440,000. Roger Wood was also hired around this time and arrived at a similar conclusion; he estimated just compensation at $390,000. Two other experts estimated just compensation at over $400,000. Sharp's experts took into consideration the eventual installation of a traffic light at the intersection of Plaza Street and Eagle Road, which would prohibit Sharp from accessing Eagle Road for commercial purposes.

ACHD took the position that the Plaza Street signal was not a part of the Eagle Road widening project and therefore could not be considered in determining the effects on Sharp's property. A bench trial was held to decide the classification of Eagle Road and whether the Plaza Street signal was a part of the project. At trial, ACHD maintained that no part of Sharp's right of access was being condemned. As to the effect of the order of condemnation, ACHD's counsel argued:

All that order of condemnation says is that all rights of access to and from the property are taken except for access if any in the project here and above described. And the project here and above described gave them the same access they already have. Doesn't say residential access.

Also defense [overlooks] the fact that the complaint which sought to condemn property doesn't take any access.... The plans gave them the same access they have had before the plans were drawn. And as to any future access it would depend on whatever the rules and regulations are.

The district court thereafter issued its findings of fact and conclusions of law, ruling that the order of condemnation was not determinative in deciding whether access had been taken and that no right of access had been condemned under the complaint. The court further concluded that the potential signal light at the intersection of Plaza Street and South Eagle Road was not part of the Project or the construction contract, and did not have any bearing on this case.[1] The court also found that the Sharp property had incurred no severance damages as a result of the take. Sharp contested this finding, claiming that the question of severance damages was not an issue at this stage of the condemnation proceedings.

Sharp thereafter filed various motions, asserting that the ACHD's order of condemnation controlled the definition of the take. The district court summarized this argument by saying:

So you are arguing that the ACHD order of take that predates the filing of the complaint in this action, trumps my conclusions and findings of fact. That's your argument? ... I do not accept that argument. My findings of fact trump the order. It is the findings of fact of this court and not the order that defines the take.

Sharp's motions were denied.

Subsequently, a jury trial was held to determine monetary compensation, but Sharp was prohibited from arguing that she had lost her commercial access rights to Eagle Road. Because Sharp was also precluded from presenting evidence of severance damages, the only inquiry left for the jury was

---

1. This holding is not challenged on appeal and thus is not an issue before this Court.

valuation for the taking of a slope easement, some trees and a narrow strip of Sharp's property in fee simple.

The jury returned a verdict of $16,507. Sharp sought costs and attorney fees of over $119,000, allegedly incurred in reliance upon ACHD's representations that access rights were being condemned. The trial court awarded no costs and fees. Specifically, the district court ruled:

> There is absolutely no basis whatsoever for counsel to contend that they were misled into the nature of the take, or that there was any basis at all to, based in argument that the Highway District had misled them into the position that they took with reference to access. The Highway District from the very beginning maintained and continues to maintain that the access after the take is exactly the same as before the take, that there were no changes in the access. That was tried in an extensive proceeding before me, and so I found and confirmed in the findings of fact.

Sharp appeals.

## II.

## IN IDAHO EMINENT DOMAIN PROCEEDINGS, ACHD'S COMPLAINT, NOT ITS ORDER OF CONDEMNATION, CONTROLS THE NATURE AND SCOPE OF THE TAKE

### A. Standard Of Review

■ The issue of whether a civil complaint of condemnation supercedes an administrative order of the highway district commissioners, for purposes of determining what property interest is being condemned, is one of first impression in Idaho and involves a question of statutory interpretation. Therefore, it is a question of law subject to free review. *Mitchell v. Bingham,* 130 Idaho 420, 422, 942 P.2d 544, 546 (1997).

### B. Analysis

#### 1. Statutory authority

■ Idaho Code § 7–707, appearing in chapter 7 entitled "Eminent Domain," pertains to the condemnation complaint and sets forth what it "must contain," including "a description of each piece of land sought to be taken, and whether the same includes the whole, or only a part, of an entire parcel or tract." Idaho Code § 40–1310(3), appearing in a chapter entitled "Highway Districts," provides that the director of a highway district: "shall have the right, subject to the order of the highway district commissioners, to begin action in the name of the highway district in the district court of the county in which the district is situated, to condemn the land necessary for the right-of-way for the highway, under the provisions of chapter 7, title 7, Idaho Code," whenever the director cannot agree with any person for the purchase of land. This section further provides: "An order of the highway district commissioners entered upon its minutes that the land sought to be condemned is necessary for a public highway and public use shall be prima facie evidence of the fact." Neither of these code sections purport to state whether it is the order of condemnation or the complaint initiating the eminent domain action that is determinative in defining what land or what rights are sought to be condemned. It is this Court's opinion, however, that I.C. § 7–707 is more specific and, perforce, controlling.

Idaho Code § 7–707 requires that the land sought to be condemned be specifically described in the complaint, whereas I.C. § 40–1310(3) only states that an order of condemnation entered upon the commissioners' minutes will be *prima facie* evidence of public use. While I.C. § 40–1310(3) requires that such an order refer to the land sought to be condemned, it does not require a specific description of the land, as does I.C. § 7–707. Furthermore, I.C. § 40–1310(3) only requires that this order be reproduced in the minutes of the commissioners, not published to the public generally or to the landowner specifically. Idaho Code § 7–707, on the other hand, specifically anticipates that the complaint will be filed with a district court and thus published to and served upon the landowner.

#### 2. Idaho case law

In *Rueth v. State,* 100 Idaho 203, 222–23, 596 P.2d 75, 94–95 (1978), the Idaho Supreme

Court discussed the role of trial courts in condemnation proceedings:

> The trial court will make the determination of the taking issues which will be reflected, as in California, in instructions which advise the jury that there has been a taking, and the nature of the property right taken where the court concludes that the taking is less than a fee. Additionally, and as appears to be the practice in California, it is desirable that the trial court enter findings and conclusions pertinent to that issue, and pertinent to *any issue other than that of just compensation.*

(Emphasis added.) Sharp asserts on appeal that *Rueth* is inapplicable because it was an inverse condemnation case. However, the *Rueth* Court approvingly cited *Brock v. State Highway Commission,* 195 Kan. 361, 404 P.2d 934, 940 (1965), and quoted: "As in *any other condemnation case,* whether there is a taking of a property right is a question of law, and must be decided by the court." *Rueth,* 100 Idaho at 220, 596 P.2d at 92. (Emphasis added.) The Court went on to say that:

> The eminent domain proceeding is founded in the constitution, and whether the proceeding is initiated by the party seeking to condemn, or by the property owner who claims his property or rights therein have been taken, it is not an ordinary civil proceeding. Hence *in either case all issues, other than just compensation, are for resolution by the trial court.*

100 Idaho at 222, 596 P.2d at 94. (Emphasis added.) Accordingly, we hold that in Idaho, trial courts are expected to define the scope

of a take where it is at issue, as in the instant case.[2]

### 3. Scope of the take

■ Sharp contends that based upon ACHD's order of condemnation, she reasonably believed that ACHD sought to condemn all *future* rights of access to Eagle Road from her remaining property. However, six days after the order of condemnation was entered and, notably, several months before Sharp hired any experts to calculate just compensation, ACHD's counsel sent a letter to Sharp listing the property rights to be acquired. This list did not include any access rights to Eagle Road and the letter specifically stated: "Your ingress and egress on Eagle Road will remain the same."[3]

At the court trial, Sharp's counsel again argued that ACHD had "set forth in the order of condemnation their language that defines the taking." The district court rejected this argument, finding: "The ... order of condemnation is not material to the access issue at all and when read in context and in its entirety, simply defines the access that is available to the Sharp property exactly as it exists."

The district court in this case looked at all of the evidence, especially the language of ACHD's complaint, and determined that no access was being condemned because Sharp's rights of access to Eagle Road were unchanged by the ACHD's actions. The court concluded that the order of condemnation was not determinative to defining the scope of the take.[4] For the reasons stated above,

---

2. On appeal Sharp cites several cases from other jurisdictions as support for her assertion that the order of condemnation is determinative in defining the nature and scope of the take. *See, e.g., County of San Diego v. Bressi,* 184 Cal.App.3d 112, 229 Cal.Rptr. 44 (Cal.Ct.App.1986); *Hudson v. City of Shawnee,* 246 Kan. 395, 790 P.2d 933, 939 (1990); *Danish Vennerforning and Old Peoples Home v. State of Nebraska, Department of Roads,* 191 Neb. 774, 217 N.W.2d 819, 822 (1974); *Hickey v. Town of Burrillville et at.,* 713 A.2d 781 (R.I.1998). While these cases may be somewhat instructive, each state has developed its own individualized body of statutory and decisional law on this topic which appear to be state specific or otherwise distinguishable.

3. From this point on, communication between the parties broke down, with each party assuming its current position was understood by the other. Sharp thereafter spent thousands of dollars hiring experts to value her property, based on her erroneous assumption that all of her *future* rights of access were being condemned by the ACHD. This caused each party to find the other's offer of settlement unreasonable. Much of this dispute could have been avoided with a simple phone call to clarify the matter of future access to Eagle Road.

4. The district court also concluded that even if the order of condemnation was determinative to defining the scope of the take, its language unambiguously did not take any of Sharp's access

we agree as a matter of law and affirm the district court's subsequent ruling that Sharp's access rights were not altered by ACHD's actions.

## III.

### SEVERANCE DAMAGES

█ Sharp challenges the district court's ruling that there were no severance damages suffered by the Sharp property. All of Sharp's claimed severance damages stem from the alleged loss of future rights of access to Eagle Road.[5] Having decided above that the district court properly concluded that the ACHD's proposed condemnation did not alter Sharp's access rights to Eagle Road, we affirm the district court's ruling that "the Sharp property . . . incurred no severance damages as a result of the Take."

## IV.

### ATTORNEY FEES AND COSTS AT THE TRIAL LEVEL

### A. Standard Of Review

█ "An award of reasonable attorneys' fees to a condemnee in an eminent domain proceeding is a matter for the trial court's guided discretion and . . . such award will be overturned only upon a showing of abuse." *State ex rel. Smith v. Jardine*, 130 Idaho 318, 320, 940 P.2d 1137, 1139 (1995), *quoting Ada County Highway District v. Acarrequi*, 105 Idaho 873, 877, 673 P.2d 1067, 1071 (1983). In exercising its discretion, the district court may take into account several factors and specifically "should" consider whether "a condemnor . . . reasonably made a timely offer of settlement of at least 90 percent of the ultimate jury verdict." *Acarrequi*, 105 Idaho at 878, 673 P.2d at 1072.

█ The application of legal doctrine to the facts of a case is a matter of law subject to free review on appeal. *Christensen v. Nelson*, 125 Idaho 663, 666, 873 P.2d 917, 920 (Ct.App.1994). However, before reaching the application of legal principles, we are constrained to affirm those factual findings made by the district court that are supported by substantial and competent evidence appearing in the record. *Id.* at 665, 873 P.2d 917.

### B. Analysis

#### 1. Authority of *Acarrequi*

█ At the conclusion of the bench trial, Sharp submitted an affidavit for attorney fees, arguing the *Acarrequi* factors. The district court then conducted a hearing and determined that the ACHD:

> offered $16,258 for this property before the lawsuit was even filed. They confirmed that offer by paying it into court as part of the quick take provision. I look at that as being the good faith offer consistent with the requirement of *Acarrequi* . . . [T]he offer was 98.5 percent of the eventual verdict.

On this record, we cannot find that the district court abused its discretion by denying Sharp's request for attorney fees based on *Acarrequi*.

#### 2. Quasi-estoppel

[10] In addition to a claim for attorney fees based on *Acarrequi*, Sharp requested an award based on quasi-estoppel, which was denied and is now appealed. In *Schiewe v. Farwell*, 125 Idaho 46, 49, 867 P.2d 920, 923 (1993), the Idaho Supreme Court addressed quasi-estoppel:

> Quasi-estoppel 'precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by [them]. The doctrine applies where it would be unconscionable to allow a person to maintain a position inconsistent with

rights. We respectfully disagree with this conclusion, and would find the condemnation order at least ambiguous and potentially confusing as to all rights of access.

5. Sharp attempted to raise other issues of severance damages once the district court ruled against her on the access issue. The district court rejected this attempt, finding that Sharp had chosen to rely on the access issue from the beginning and never raised other issues of severance. Nevertheless, at oral argument before this Court, Sharp conceded that the issue of these other alleged severance damages was not worth retrying if she did not prevail as to the access issue.

one in which [they] acquiesced, or of which [they] accepted a benefit.' *KTVB, Inc. v. Boise City,* 94 Idaho 279, 281, 486 P.2d 992, 994 (1971). The doctrine of quasi-estoppel is distinguished from equitable estoppel in that 'no concealment or misrepresentation of existing facts on the one side, nor ignorance or reliance on the other, is a necessary ingredient.'

Sharp claims that the district court erred by not awarding attorney fees and costs to her based on quasi-estoppel because the ACHD represented to her that her access to Eagle Road was being taken and in reasonable reliance thereon she retained counsel and experts to quantify her damages and just compensation. We disagree.

While some representations by ACHD may be considered ambiguous, as previously noted, Sharp received a letter from ACHD's counsel prior to her incurring almost all of these asserted fees and costs, which made no mention of ACHD acquiring her future rights of access and stated that her "ingress and egress on Eagle Road will remain the same." In addition, the complaint filed by ACHD did not seek to condemn Sharp's right of future access. There is substantial and competent evidence in the record to support the district court's findings that ACHD neither misrepresented, nor made an unconscionable change of, its position.

Accordingly, we conclude that the district court properly refused to apply the doctrine of quasi-estoppel because ACHD never adopted the position that Sharp's future rights of access to Eagle Road were being condemned.

## V.

## CONCLUSION

The district court's judgment, setting forth what property rights were acquired by ACHD through condemnation and awarding the just compensation determined by the jury, is affirmed. The district court's denial of attorney fees and costs to Sharp is also affirmed. ACHD is awarded its costs on appeal, but each party is to bear its own attorney fees.

LANSING and PERRY, Judges, concur.