M. E. HILL, Appellant,

v.

E. G. SCHUHART II, Appellee.

No. 7465.

Court of Civil Appeals of Texas.

Amarillo.

May 17, 1965.

Rehearing Denied June 14, 1965.

Fike & Hunter, Dalhart, for appellant.

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, for appellee.

NORTHCUTT, Justice.

M. E. Hill brought suit in the District Court of Dallam County, Texas, against E. G. Schuhart II to recover possession of certain real estate and to recover as damages any sum of money Schuhart had received or would receive under the terms of the Soil Bank Conservation Reserve Program and contending he was entitled to the sum of $7,584.00, being the amount due him as tenant under such program for the years 1963, 1964, and 1965.

Mrs. M. W. Murphy was the owner of the land in question and M. E. Hill was the tenant thereon when said property was originally placed in the Soil Bank Conservation Reserve Program. It was agreed at the time Hill was to receive ⅔ of said Soil Bank payments and Mrs. Murphy ⅓. Later they agreed to change such agreement and Hill was to receive ½ of such payment and Mrs. Murphy ½. The Soil Bank Conservation Contracts here involved were executed with the United States Department of Agriculture Commodity Stabilization Service by Mr. Hill and Mrs. Murphy and said contracts provided among other matters the following:

"(b) The loss of control of the farm by sale or otherwise by any owner signatory to the contract, or by any cash tenant, standing-rent tenant or fixed-rent tenant who has a lease for the entire contract period and who signed the contract in lieu of the owner, shall terminate the contract as to such producer. In the event of such termination, the producer losing control shall not be entitled to further compensation under the contract and shall refund all Federal cost-shares received by him under the contract unless the producer who acquires his interest in the farm is or becomes a party to the contract

and assumes all obligations thereunder. The loss of control by any contract signer shall not affect the rights and obligations of all other producers who signed the contract.

"(c) If the county committee is notified in writing, prior to making payment under an existing contract to a tenant (including a tenant operator) or to a sharecropper, that such tenant or sharecropper is no longer on the farm, the county committee shall determine the division of compensation between the original tenant or sharecropper and the successor tenant or sharecropper, or between the original tenant or sharecropper and the landlord or operator if the tenant or sharecropper is not replaced, on a basis which it determines to be fair and equitable."

After said contracts were executed Mrs. Murphy died on October 12, 1962, and Mrs. Mabel C. Steele became the owner of the real estate here involved and in December 1962 notified Mr. Hill that his rental agreement was cancelled as of January 1, 1963. Mrs. Steele then leased the land to Mr. Schuhart for the years 1963, 1964, and 1965, and they entered into the same kind of contract with the United States Department of Agriculture Commodity Stabilization Service and the same was approved for the Secretary of Agriculture after the county committee had been notified in writing that Hill was no longer tenant on this land.

Mr. Hill testified by deposition that he never at any time subsequent to 1948 had a lease contract with Mrs. Murphy that was more than a one-year term. On April 12, 1959, Mr. Hill had a lease drawn up and signed by him and sent to Mrs. Murphy requesting her to give him a lease for a period beginning as of January 1, 1959, and ending and terminating at midnight on December 31, 1965. Mrs. Murphy did not sign the purported lease. It is Mr. Hill's contention that the contract signed by him and Mrs. Murphy placing the land in question in the Soil Bank Program gave him

the right to possession as a tenant during the duration of said contract. Mr. Schuhart made and presented his motion for summary judgment. The trial court granted summary judgment decreeing that Hill take nothing against E. G. Schuhart as to the land; that he recover no sum of money of and from Schuhart; and he take nothing in any regard against Schuhart. From that judgment Hill excepted and perfected this appeal. Hill will hereafter be referred to as appellant and Schuhart as appellee.

The sole issue to be determined under this record is whether the Soil Bank Contract by its terms and by the regulations of the Department of Agriculture pertaining thereto leased the land in question to appellant for the full term that said land was in the Soil Bank Program. In the deposition of appellant in the motion for summary judgment he testified that he never at any time subsequent to 1948, this being the date he first leased the land, had a lease contract with Mrs. Murphy that was for more than a one-year term. Appellant had a lease contract drawn and sent to Mrs. Murphy seeking a lease for the full term the land was in the Soil Bank Program but Mrs. Murphy did not sign the lease sent to her but appellant continued in possession of the lease from year to year as before and until the death of Mrs. Murphy.

Appellant further testified in his deposition that he had nothing in writing except the Soil Bank agreement whereby Mrs. Murphy purported to lease the land to him for any five-year term. Since he did not have a written contract under Articles 1288 and 3995 Vernon's Ann.Tex.Civ.St., he had nothing at any time other than the lease for one year unless the Soil Bank agreement gave him a lease for the full period of such agreement.

We have not been cited to any authority, and neither have we found one, interpreting the Soil Bank agreement holding that said agreement gave the tenant a lease for the full term of the agreement. The Soil Bank Conservation Reserve Contract pro-

vided that all of the provisions of the regulations issued by the Secretary governing the Conservation Reserve Program were a part of the contract. Article 1809, Title 7, United States Code governing the Soil Bank Program, is as follows:

"The facts constituting the basis for any payment or compensation, or the amount thereof, authorized to be made under this chapter, when officially determined in conformity with applicable regulations prescribed by the Secretary, shall be final and conclusive and shall not be reviewable by any other officer or agency of the Government. In case any producer who is entitled to any payment or compensation dies, becomes incompetent, or disappears before receiving such payment or compensation, or is succeeded by another who renders or completes the required performance, the payment or compensation shall, without regard to any other provisions of law, be made as the Secretary may determine to be fair and reasonable in all the circumstances and so provide by regulations."

Article 1812, Title 7, United States Code, is as follows: "The Secretary shall prescribe such regulations as he determines necessary to carry out the provisions of this chapter." Section 750.156 of such regulations reads in part as follows:

"If an owner or a tenant-operator who enters into a contract loses control of the farm before the end of the contract period, his successor, if any, as owner or tenant-operator, as the case may be, during the contract period may upon his request be substituted under the contract as owner or tenant-operator by executing a form prescribed by the Administrator, ASCS for such purposes."

Section 750.169(b) (1) of such regulations reads in part as follows:

"The loss of control of all or a part of the farm by sale, death, *or otherwise,* by any producer signatory to the contract shall terminate the contract as to such producer with respect to the acreage over which control is lost." (Emphasis ours.)

It is stated in Brown v. Payne, 142 Tex. 102, 176 S.W.2d 306, as follows:

" 'Through all the rules governing construction of instruments, there runs the central thought of ascertaining the real intention of the parties. In the nature of such inquiry, there can be no fixed rule, for every case, in large measure, depends upon its own facts, context of instrument, and circumstances. Of course it is elementary, if there is no ambiguity, the construction of the written instrument is for the court, and moreover, even in those cases of ambiguous instruments, if the parol evidence is undisputed as to the circumstances, the construction is yet a question of law for the court.' "

Appellant attempting to secure a lease for a period of five years and Mrs. Murphy failing to execute such a lease and appellant continuing to use such land under a one-year lease and never raising such issue until losing possession of such land, we cannot hold it was the real intention of the parties that appellant was given a lease upon the land during the entire period of the Soil Bank agreement. Neither do we find anything in the agreement giving appellant a lease for the duration of the Soil Bank agreement. We are of the opinion, and so hold, that under the terms of the agreement and the regulations as prescribed by the Secretary that Mrs. Steele, the owner, had the right to cancel appellant's right to possession at the end of the year he had a lease thereon and that the Soil Bank agreement did not give him a lease for the duration of such agreement.

Judgment of the trial court is affirmed.