702 P.2d 864

**WILLIAMS LAKE LANDS, INC., an Idaho corporation, and Thomas H. Mifflin, Plaintiffs-Appellants,**

v.

**LeMOYNE DEVELOPMENT, INC., an Idaho corporation; Harry F. LeMoyne; and Lemhi Title & Abstract Co., an Idaho corporation, Defendants-Respondents,**

**and**

**George Heyer and Elizabeth E. Heyer, husband and wife; and all persons unknown claiming any right, title or interest in the real property which is subject to this action, Third Party Defendants-Respondents.**

**No. 14748.**

Court of Appeals of Idaho.

June 20, 1985.

Petition for Review Denied
Sept. 25, 1985.

Robert M. Tyler, Jr. (argued), Elam, Burke & Boyd, Boise, for plaintiff-appellant Williams Lake.

Paul M. Beeks, Smith, Beeks & Goss, Twin Falls, for defendant-respondent Le-Moyne.

James C. Herndon, Salmon, for defendant-respondent Heyers.

WALTERS, Chief Judge.

Williams Lake Lands, Inc., and Thomas Mifflin filed this action seeking to avoid foreclosure of a mortgage Williams Lake Lands, Inc. had granted to LeMoyne Development, Inc. The plaintiffs also sought damages against LeMoyne Development, Inc., Harry LeMoyne, and Lemhi Title & Abstract Company. For the sake of clarity, we will refer to the plaintiffs and defendants as Mifflin and LeMoyne, respectively.[1] LeMoyne filed a counterclaim alleging Mifflin's default on the mortgage and seeking a judgment of foreclosure. The district court held Mifflin's claims to be lost through waiver, estoppel or the applicable statute of limitation and entered judgment on behalf of LeMoyne, granting foreclosure of the mortgage. On appeal, Mifflin contends the trial court made erroneous conclusions regarding the effect of flaws in subdivision plats prepared on the property and that the court erred in concluding that his claims and defenses were waived or lost through estoppel or the statute of limitation. We conclude Mifflin is estopped to raise claims or defenses arising from the subdivision plats, and therefore affirm the judgment of the district court.

In February 1971, Mifflin agreed to purchase from LeMoyne property near Williams Lake in Lemhi County, Idaho. The purchase included 178 lots in Williams Lake Subdivisions 1, 2, 3, and 4 and certain unplatted ground adjacent to the subdivisions. The deed to Mifflin was placed in escrow at Lemhi Title & Abstract Company. Pursu-

---

**1.** Mifflin is the principal shareholder in Williams Lake Lands, Inc. Discussion of the issues in this appeal does not require distinguishing between corporate and individual identities. Also, unless noted otherwise, our reference to

"LeMoyne" includes reference to both LeMoyne Development, Inc. and Harry LeMoyne. Most of the parties' actions relative to this suit were taken by Thomas Mifflin and Harry LeMoyne as representatives of their corporations.

ant to the sales agreement, Mifflin executed a promissory note secured by a mortgage calling for payments to LeMoyne totaling $201,000 plus interest. Payments to LeMoyne were to come from revenue raised from lot sales and, in the early years following the purchase agreement, sales activity in the subdivisions was vigorous.

In 1972, an owner of other property in the Williams Lake subdivisions hired an engineering firm to complete a feasibility study regarding the installation of a sewer and water system in the Williams Lake area. While gathering information for its report, the firm discovered errors in the subdivision plats as prepared by the original surveyor. Specifically, the physical location of certain roadways and lot boundaries did not precisely correspond with the platted location and some of the lot boundary descriptions did not "close", i.e., the description did not begin and end at the same point. The plats were also incomplete in some respects. The most serious errors occurred in the plats of subdivisions 2 and 4; the errors in the other plats were minor. In 1974, LeMoyne, Mifflin, Melvin Melton (who had sold the Williams Lake property to LeMoyne), and Hugh Coiner (the original surveyor) agreed, in what was referred to at trial as the "Cottonwood" agreement, to have subdivisions 2 and 4 resurveyed and replatted. The new plat was accepted by the Lemhi County Commissioners and recorded, although numerous individual lot owners who were affected by the resurvey did not sign the new plat.[2]

In March 1980, LeMoyne sent a notice of default to Mifflin. Mifflin had not made the payments as required in the 1971 purchase agreement and, at the time of trial, the outstanding balance owed to LeMoyne was $101,175 plus interest. Before LeMoyne commenced foreclosure proceedings, Mifflin filed this action. The gravamen of Mifflin's complaint was that LeMoyne, because of the errors in the original subdivision plats, either innocently or fraudulently failed to convey marketable title to the lots. Mifflin believed the 1974 replat did not alleviate the problems because the individual lot owners did not sign the replat. This error by LeMoyne, Mifflin alleged, entitled Mifflin to a new survey and plat so that marketable title could be conveyed. In addition, Mifflin made claims for compensatory damages, punitive damages and attorney fees. He also sought restraining orders to prevent LeMoyne or Lemhi Title & Abstract Company from instituting legal proceedings to foreclose the mortgage and to prevent distributions from the escrow account; reformation of the original purchase agreement to give Mifflin five additional years to pay the promissory note; or alternatively, for recission of the purchase agreement and restitution of the parties to their respective precontract positions. Answers and counterclaims seeking foreclosure were filed by LeMoyne and Lemhi Title & Abstract Company. A third-party claim was filed by LeMoyne against George and Elizabeth Heyer, alleging that property purchased by the Heyers from Mifflin was subject to the mortgage created in the 1971 purchase agreement.[3]

Some of Mifflin's seventeen claims were dismissed on summary judgments entered in favor of LeMoyne. Following a bench trial on the remaining claims, findings of fact and conclusions of law were entered by the trial court. The court found, *inter alia*, that LeMoyne had made no misrepresentations concerning the land sold to Mifflin. The court concluded that Mifflin

---

2. The parties to this appeal have taken the position in this Court, and in the district court, that all landowners affected by the replatting of a subdivision must sign the new plat. Because no ruling on this point is sought, we announce no holding; but we do adopt the parties' position as the predicate for our discussion in this case.

3. The 1971 contract as amended required Mifflin to assign eighty-two percent of the proceeds from lot sales to LeMoyne. During the approximately ten-year period that Mifflin sold lots in the Williams Lake subdivisions, LeMoyne released the lots sold from the 1971 mortgage if the proceeds were paid or assigned to LeMoyne. Mifflin sold a large parcel of property to the Heyers but declined to assign any of the proceeds to LeMoyne.

waived the obligation LeMoyne had to furnish good title to lots designated on the original plat by entering into the Cottonwood agreement to replat subdivisions 2 and 4. The court also concluded that Mifflin's claim based on the 1974 replat was barred by the statute of limitation. The court further concluded that Mifflin was in default on the purchase agreement and that he was estopped from claiming a failure of marketable title as an affirmative defense to the mortgage foreclosure. The judgment in favor of LeMoyne would not affect the Heyer property sale, the court concluded, but Lemhi Title & Abstract Company was directed to apply eighty-two per cent of the Heyer sale proceeds to the mortgage payments Mifflin owed to LeMoyne.[4] We agree with the district court that Mifflin is estopped, under the doctrine of quasi-estoppel, to raise claims or defenses regarding the replat of subdivisions 2 and 4.

Our Supreme Court in *KTVB, Inc. v. Boise City*, 94 Idaho 279, 486 P.2d 992 (1971) discussed at length the doctrine of quasi-estoppel. Unlike the more traditional estoppel doctrine (called estoppel in pais) "no concealment or misrepresentation of existing facts on the one side, no ignorance or reliance on the other, is a necessary ingredient." *Clontz v. Fortner*, 88 Idaho 355, 364–65, 399 P.2d 949, 954 (1965), quoted in *KTVB, Inc. v. Boise City, supra.* Instead, quasi-estoppel requires that "the person against whom the estoppel is sought must have gained some advantage for himself ...; in addition it must be unconscionable to allow the person against whom the estoppel is sought to maintain a position which is inconsistent with the one in which he accepted the benefit." *Tommerup v. Albertson's, Inc.*, 101 Idaho 1, 6,

607 P.2d 1055, 1060 (1980). The applicability of quasi-estoppel turns upon the specific facts and circumstances of the case under consideration. *KTVB, Inc. v. Boise City, supra.*

The record indicates Mifflin purchased eighty-three lots in subdivision 2 and thirty-eight lots in subdivision 4. The original plat of subdivision 2 was recorded in 1963; the original subdivision 4 plat was recorded in 1970.[5] The parties do not contest that the original plats fail to meet the statutory plat requirements. However, we hold that Mifflin is estopped to argue the invalidity of the 1974 replat. Mifflin argues the replat is invalid because it does not contain the owners' signatures, nor was it prepared and filed according to I.C. § 50–1314, a section authorizing a forced plat procedure instigated by the county recorder. There is in this case no question that the county recorder did not notify the property owners and demand a corrected plat. Indeed, nothing in the record indicates the recorder was aware of defects in the original plat until the corrected plat was submitted for filing. The replat was accepted and approved by the county commissioners and duly recorded by the county recorder.

According to the terms of the Cottonwood agreement, Mifflin, LeMoyne, Melton and Coiner were all responsible for getting the replats properly recorded. The evidence at trial indicated the four left it to the other party to the Cottonwood agreement—the surveyor—to record the replats and that the surveyor did, in fact, submit the replats for recording. It was Mifflin's own acquiescence in the recording procedure, despite his responsibility under the Cottonwood agreement, that avoided compliance with the statutory procedure in the

---

**4.** The Heyers continued to make payments to Lemhi Title, the escrow holder, throughout the period of litigation. At the time of trial, those funds had not been disbursed. No party has appealed from that portion of the trial court's judgment regarding payment of the Heyer purchase proceeds.

**5.** The state legislature in 1967 adopted the Plat and Vacations Act, codified in Title 50, chapter 13 of the Idaho Code. No evidence in the

record indicates whether the original subdivision 2 plat failed to satisfy any pre-1967 legal requirements for plats, nor does the record indicate the plat was vacated pursuant to I.C. § 50–1306A. However, because the 1974 replat corrected errors in the original plats for both subdivision 2 and for subdivision 4, we do not consider the effect of I.C. § 50–1315 on the subdivision 2 original plat.

filing of the replats. Mifflin fully acquiesced in the recording of the replat of subdivisions 2 and 4 and he accepted the benefit of the increased saleability of his lots. The validity of the replat was unquestioned until 1980 when Mifflin's default on the purchase agreement was imminent. "It seems clear that it is only the end result of the process, and not the process itself, which prompts appellants' allegations of illegality at this time." *KTVB, Inc. v. Boise City,* 94 Idaho at 282, 486 P.2d at 995. On these facts, we hold it would be unconscionable to allow Mifflin to maintain a position which is inconsistent with the one in which he accepted a benefit. Accordingly, Mifflin is estopped to challenge the 1974 replats.

Mifflin contends the doctrine of quasi-estoppel cannot preclude his claims for relief because a necessary element of that doctrine is that the party estopped must have taken his initial position with full knowledge of the facts. *See Tommerup v. Albertson's, Inc., supra; KTVB, Inc. v. Boise City, supra.* Quasi-estoppel is not applicable, Mifflin contends, because he did not know when the replats were recorded that a subdivision plat needed to be signed by the property owners. We disagree. Because quasi-estoppel is an equitable doctrine, its application depends upon a case by case analysis of the equities involved, rather than upon precise definitional standards. *See City of Nampa v. Swayne,* 97 Idaho 530, 547 P.2d 1135 (1976); *Dalton Highway Dist. of Kootenai County v. Sowder,* 88 Idaho 556, 401 P.2d 813 (1965). Although the Cottonwood agreement did not shift the burden from LeMoyne to Mifflin to have the replats recorded, it did share the duty equally among Mifflin, LeMoyne, Coiner and Melton. The recording responsibility became a common duty. Thus, Mifflin assumed a duty, equal to that of LeMoyne, to have the replats properly recorded, and he did not perform. Nor did

Mifflin, consistent with his shared responsibility, verify that the proper recording procedure was followed. Even after Mifflin belatedly became aware of the need for the owners' signatures, he made no effort to acquire the signatures of property owners to correct the recording. Mifflin did not demand performance from the other three responsible for the recording of the replats. Instead, he filed a suit in an effort to block foreclosure proceedings. We believe the equities weigh against Mifflin. Because the other issues raised by Mifflin turn on the validity of his argument regarding the replats, we need not address Mifflin's other arguments.

The presence of the Heyers in this appeal requires little discussion. In his opening brief on appeal, Mifflin did not argue any issues concerning the portion of the judgment affecting the Heyers. The Heyers nonetheless filed a respondent's brief, arguing in favor of the judgment protecting their proprietary interests.[6] We are not persuaded that Heyers had to assume any active role in this appeal. We therefore decline to award attorney fees, on appeal, to them.

LeMoyne also requests attorney fees on appeal. Because the contract between LeMoyne and Mifflin provides for payment of the successful parties' attorney fees, LeMoyne is entitled to a fee award on appeal.

The judgment of the trial court is affirmed. Costs and attorney fees to respondent, LeMoyne Development, Inc.

BURNETT and SWANSTROM, JJ., concur.

---

6. In his reply brief, Mifflin argues only that the trial court erred in awarding attorney fees and costs to the Heyers. The award was made pursuant to the terms of the Mifflin-Heyer sales agreement. Because the contract provides for payment of attorney fees and because the Heyers' presence in this suit was brought about through Mifflin's breach of their contract, the trial court did not err by awarding fees and costs to the Heyers.