867 P.2d 944

**Violet SCHIEWE, a Personal Representative for the Estate of H. Arthur Schiewe, and Violet Schiewe, an individual acting in her own personal capacity, Plaintiff–Appellant,**

v.

**William A. FARWELL and Irene Farwell, husband and wife, and Mary Curl and Marian Basterrechea, Defendants–Respondents.**

No. 18967.

Court of Appeals of Idaho.

June 1, 1992.

Rehearing Granted Sept. 30, 1993.

Appeal Decided See: 125 Idaho 46, 867 P.2d 920.

Emil F. Pike, Jr., Twin Falls, for plaintiff-appellant.

Parsons, Smith, Stone & Fletcher, Burley, for defendants-respondents. William Parsons, argued.

SILAK, Judge.

This is an appeal from a declaratory judgment regarding the respective rights of agricultural landowners, respondents William A. and Irene Farwell, Mary Curl, and Marion Basterrechea (collectively, "Farwell"), and their tenant, Violet Schiewe, to a Conservation Reserve Program Contract ("CRP Contract"). William Farwell represents the owners of the farmland that is subject to the CRP Contract. This action arose when Farwell sought to terminate the tenancy of Violet Schiewe, who, together with her deceased husband, had leased the farmland. Schiewe argues that, in the absence of a written lease, the CRP Contract created a ten-year obligation between the owners of the farmland and herself. Farwell answered the complaint arguing that Schiewe's claim was barred by the statute of frauds and filed a counterclaim asking the court to declare that Schiewe had no right to occupy the land. In response to the counterclaim, Schiewe argued that Farwell was estopped from denying the ten-year contract and that the oral contract was enforceable because Schiewe had detrimentally relied on Farwell's representations and because Schiewe had partially performed the contract. The district court rejected Schiewe's argument and held that after the original written lease expired in 1974, Schiewe became a holdover tenant with a year-to-year oral tenancy. The district court further held that the CRP Contract was not a lease and did not give Schiewe a right to possession beyond the end of 1990. Schiewe's claim is based on her independent rights under the CRP Contract and not on her rights as a holdover tenant. We conclude that the CRP Contract created legal obligations independent of the prior lease and that the landlords breached these obligations. For this reason, we reverse the judgment of the district court.

The following facts are relevant to this action. Mary Curl and Marian Basterrechea leased their land to William and Irene Farwell. The Farwells, in turn, leased this land

and other land that the Farwells owned to H. Arthur Schiewe and his wife, Violet. A five-year written lease agreement was executed in March, 1970 (the 1970 Lease Agreement). Under the terms of the 1970 Lease Agreement, the Schiewes were to pay, as a yearly rental fee, one-half of all crops grown or produced upon the leased farmland. The written lease expired on December 31, 1974. The Schiewes continued to farm the land until February, 1987, under a verbal year-to-year lease with the same terms as the original written lease.

In February, 1987, the three landowners, together with the Schiewes, entered into a ten-year CRP Contract which placed a portion of the land leased to the Schiewes, some 2,214 acres, into the United States Conservation Reserve Program. All parties were signatories of the contract. Pursuant to the terms of the contract, the Schiewes prepared the land, seeded it with grass, and sprayed it for noxious weeds. Under the terms of the contract, the land had to be taken out of production. No crops could be grown on the land.

In July, 1987, H. Arthur Schiewe died. In the late spring of 1988, the Farwells prepared a five-year written lease and presented it to Violet Schiewe. According to a letter from Schiewe's attorney, the proposed 1988 lease would have reduced her yearly payment from the government from $50,000 to $30,000. Such a reduction would be a violation of the CRP Contract. Schiewe refused to sign the five-year lease; however, she said that she would sign a lease that was consistent with the terms of the CRP Contract. Because Schiewe refused to sign the five-year lease, the Farwells threatened to evict her from the land. Schiewe filed this action for declaratory relief contending that she had a right to remain on the land for ten years under the terms of the CRP Contract. The Farwells answered and counterclaimed, asserting that Schiewe had no written lease for the land, and that a ten-year oral lease is barred by the statute of frauds.

The district court found that Schiewe and Farwell were participants in the CRP Contract and that Schiewe was an "operator" under the terms of the contract. The court ruled that the CRP Contract did not preclude Farwell from changing tenants or terminating the landlord-tenant relationship with Schiewe. The district court held that Schiewe was a holdover tenant pursuant to I.C. § 6–303(2), and that the CRP Contract itself did not create a landlord-tenant relationship. Finally, the court concluded that Schiewe's right to remain as an operator under the CRP Contract was dependent upon the existence of a landlord-tenant relationship which, in turn, depended upon the existence of either a written lease agreement or a holdover arrangement. The court further concluded that Schiewe's tenancy could be terminated, after proper notice was served, at the end of 1990, the final holdover period. The court characterized the CRP Contract as a contract which gave rise to rights and obligations separate and apart from the rights and obligations of a landlord-tenant relationship with all remedies for enforcement in the United States government. We reverse the judgment of the district court under the doctrine of quasi estoppel. The Farwells cannot reap an unconscionable advantage from the CRP Contract by denying the existence of a lease to Schiewe as long as Schiewe remains an operator under the CRP Contract.

■ As a preliminary issue, we address the question of jurisdiction. The Soil Bank Program, 7 U.S.C. § 1801–1838 (repealed in part), is the predecessor to the Conservation Reserve Program. Under the Soil Bank Program, cases which involved landlord-tenant questions could not be litigated in federal court because the statute creating the Soil Bank Program provided federal jurisdiction only when a litigant sought review of an administrative decision by the Agricultural Stabilization and Conservation Committee (now the Agricultural Stabilization and Conservation Service). 7 U.S.C.A. § 1831(d); *Dickson v. Edwards,* 293 F.2d 211 (5th Cir. 1961) (federal court has jurisdiction to review administrative decisions such as cancellation or termination of Conservation Reserve contract but did not have jurisdiction to adjudicate rights between landlord and tenant); *Caulfield v. U.S. Dept. of Agriculture,* 293 F.2d 217 (5th Cir.1961) (judicial review under

Soil Bank Act is limited to question whether contract has been violated, and federal courts had no jurisdiction of tenant's action to review administrative determination that landlord had not violated Act in manner of securing acreage reserve contract). However, in *Reimann v. United States*, 315 F.2d 746 (9th Cir.1963), the court held that the meaning and effect of a contract under the Soil Bank Act was governed by federal law rather than state law.[1] In this case, the interpretation of the CRP Contract comes into the case only as an ancillary question in Schiewe's claim for equitable or declaratory relief. Because our decision involves a question of state law, and because there is no statute vesting exclusive jurisdiction in the federal court, we conclude that we have concurrent jurisdiction with the federal court to interpret the CRP Contract to the extent that it impacts Schiewe's equitable claim against Farwell. *See Charles Dowd Box Co., Inc. v. Courtney*, 368 U.S. 502, 507–508, 82 S.Ct. 519, 522–523, 7 L.Ed.2d 483 (1962) (state courts can exercise concurrent jurisdiction with the federal courts in cases arising under federal law where state jurisdiction is not excluded by express provision of a federal statute or by incompatibility in its exercise arising from the nature of the particular case); *see also Howlett v. Rose*, 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990) (state courts as well as federal courts have jurisdiction over cases involving claims under 42 U.S.C.S. § 1983); *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990) (state courts have concurrent jurisdiction to adjudicate federal claims under Title VII of the Civil Rights Act of 1964); *Tafflin v. Levitt*, 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990) (state courts have concurrent jurisdiction to hear civil claims under the Racketeer Influenced and Corrupt Organizations Act (RICO) where exclusive federal jurisdiction is neither express or implied); *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981) (state courts have concurrent jurisdiction over personal injury and indemnity cases under the Outer Continental Shelf Lands Act (43 U.S.C.S. §§ 1331, *et seq.*)); *Lear v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969) (state court has authority to consider patent validity in licensor's suit for breach of royalty agreement).

The district court held that Schiewe was a holdover tenant from year to year and that the CRP Contract did not give Schiewe a right to possession beyond the year 1990 if Farwells gave proper notice of termination. The court refused to apply the doctrine of estoppel to preclude Farwell from terminating the tenancy. We conclude that the district court erred.

Idaho Code § 6–303(2), which defines an action for unlawful detainer, makes special provision for the rights of an agricultural tenant holding over after the expiration of the term of a lease:

> In all cases of tenancy upon agricultural lands, where the tenant has held over for more than sixty (60) days after the expiration of his term without any demand of possession or notice to quit by the landlord, ... he shall be deemed to be holding by permission of the landlord, ... and shall be entitled to hold under the terms of the lease for another full year, and shall not be guilty of an unlawful detainer during said year, and such holding over for the period aforesaid shall be taken and construed as consent on the part of a tenant to hold for another year.

Though this statutory provision applied to the landlord-tenant contract between the year 1975 to the year 1987, it does not govern the year 1987 or the years following because the existence of the CRP Contract estops Farwell from denying the existence of a lease to Schiewe as long as she is a party to the contract.

---

1. In *Reimann*, the appellants faced a penalty under the Soil Bank contract because they had planted their land with wheat in violation of their contractual agreement. On appeal, they argued that the contract was void because Mrs. Reimann had not signed it. They based this argument on an Idaho statute which requires that both husband and wife sign any document encumbering real property; and they contended that the Soil Bank contract was an encumbrance on their farm. The trial court held that the contract was not an encumbrance; the appellate court agreed and held that Mr. Reimann's execution of the contract came within his powers of management and control over the community property.

74

The district court held that Schiewe is not entitled to possession of the Farwell land under the doctrine of equitable estoppel because she had not met her burden of proof as to this legal theory.[2] In her answer to Farwell's counterclaim, Schiewe argued that, by virtue of the promises Farwell made to Schiewe that she could occupy the land for ten years, Farwell is estopped from denying the validity of the ten-year contract. Schiewe never implied that she intended to limit her argument to the theory of equitable estoppel; in fact, her statement of the facts indicates that she intended to present her case under the theory of quasi estoppel. Quasi estoppel is a form of estoppel *in pais*, or equitable estoppel, which "is based upon the broad equitable principle which courts recognize, that a person, with full knowledge of the facts, shall not be permitted to act in a manner inconsistent with his former position or conduct to the injury of another." *KTVB, Inc. v. Boise City*, 94 Idaho 279, 281, 486 P.2d 992, 994 (1971) (citing *Godoy v. Hawaii*, 44 Hawaii 312, 354 P.2d 78 (1960)). We conclude that the district court erred by failing to apply this form of estoppel to the present case.

The question whether the lower court properly applied a legal theory is a question of law over which we exercise free review. *See, e.g., Safeco Ins. Co. of America v. Yon*, 118 Idaho 367, 369, 796 P.2d 1040, 1042 (Ct.App.1990) (question whether trial court properly applied collateral estoppel or issue preclusion is question of law freely reviewed on appeal); *Idaho Lumber, Inc. v. Buck*, 109 Idaho 737, 741, 710 P.2d 647, 651 (Ct.App.1985) (appellate court exercises free review over question whether district court applied correct legal principles to the facts). In the present case the facts are undisputed. When presented with an issue that raises only a question of law, an appellate court is not bound by the findings of the trial court, but is free to draw its own conclusion from

the evidence presented. *Clark v. St. Paul Property and Liability Ins. Cos.*, 102 Idaho 756, 757, 639 P.2d 454, 455 (1981).

Quasi estoppel is a broadly remedial doctrine, often applied *ad hoc* to specific fact patterns. *Keesee v. Fetzek*, 111 Idaho 360, 362, 723 P.2d 904, 906 (Ct.App.1986). Our Supreme Court discussed the doctrine of quasi estoppel at length in *KTVB*, 94 Idaho at 281–82, 486 P.2d at 994–95. The doctrine is designed to prevent a party from reaping an unconscionable advantage, or from imposing an unconscionable disadvantage upon another, by changing positions. *Keesee*, 111 Idaho at 362, 723 P.2d at 906. Quasi estoppel, unlike the more traditional form of estoppel (called estoppel *in pais* or equitable estoppel) does not require misrepresentation by one party or actual reliance by the other. *Id.*, 111 Idaho at 362, 723 P.2d at 906 (citing *Evans v. Idaho State Tax Commission*, 97 Idaho 148, 540 P.2d 810 (1975)); *Williams Lake Lands v. LeMoyne Development*, 108 Idaho 826, 829, 702 P.2d 864, 867 (Ct.App. 1985) (citing *Clontz v. Fortner*, 88 Idaho 355, 364–65, 399 P.2d 949, 954 (1965)). Instead, the doctrine of quasi estoppel requires that "the person against whom the estoppel is sought must have gained some advantage for himself . . .; in addition it must be unconscionable to allow the person against whom the estoppel is sought to maintain a position which is inconsistent with the one in which he accepted the benefit." *Tommerup v. Albertson's, Inc.*, 101 Idaho 1, 6, 607 P.2d 1055, 1060 (1980), *overruled on other grounds by Harrison v. Taylor*, 115 Idaho 588, 768 P.2d 1321 (1989); *KTVB*, 94 Idaho at 282, 486 P.2d at 994.

The applicability of quasi estoppel turns upon the specific facts and circumstances of the case under consideration. *Williams Lake Lands*, 108 Idaho at 829, 702 P.2d at 867. As noted above, the facts in this case

---

**2.** The elements of equitable estoppel are: (1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) the party asserting estoppel did not know or could not discover the truth; (3) the false representation or concealment was made with the intent that it be relied upon; and (4) the person to whom the representation was made or

from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice. *Theriault v. A.H. Robins Co., Inc.*, 108 Idaho 303, 307, 698 P.2d 365, 369 (1985) (citing *Twin Falls Clinic and Hospital Bldg. v. Hamill*, 103 Idaho 19, 22, 644 P.2d 341, 344 (1982)).

are not in dispute. After having enjoyed a long landlord-tenant relationship, Schiewe, together with Farwell, entered into a ten-year CRP Contract. By entering into the CRP Contract, and by having Schiewe sign the contract as the operator of the land, Farwell led Schiewe to believe that she would have the benefit of the ten-year contract which would pay her $50,000 per year. Under the terms of the contract, Schiewe took the land out of production. Schiewe incurred considerable expense to prepare the land, seed it with grass, and spray it for noxious weeds. After Schiewe's husband died, Farwell attempted to terminate Schiewe's tenancy. Initially, Farwell presented Schiewe with a five-year lease contract which would have reduced the amount she received yearly to $30,000. Schiewe refused to sign the contract. Farwell then gave her notice of his intent to terminate her tenancy.

Farwell gained an advantage for himself by inducing Schiewe to enter the CRP Contract and perform the work necessary to take the land out of production. After he obtained this benefit, he decided to terminate her tenancy. Terminating Schiewe's tenancy midway through the contract is a position which is inconsistent with the representation Farwell initially made to Schiewe by entering into the CRP Contract. By changing his position and terminating the contract, Farwell deprives Schiewe of the benefits she expected to enjoy as a participant in the CRP program. This is an unconscionable disadvantage to Schiewe. In reaching this conclusion, we rely on our interpretation of the CRP Contract which provides significant protections to tenants and operators and which prohibits a landlord from unilaterally excluding a tenant from enjoying the benefits of the CRP program. We discuss this below.

■ As a preliminary matter, we note our standard of review. In the present case, the district court entered a declaratory judgment rejecting Schiewe's estoppel argument and further interpreting the CRP Contract.[3] The interpretation of an unambiguous writ-

ten contract is a question of law over which we exercise free review. *See St. Clair v. Krueger,* 115 Idaho 702, 703, 769 P.2d 579, 580 (1989); *DeLancey v. DeLancey,* 110 Idaho 63, 65, 714 P.2d 32, 34 (1986). In the present case, there is no contention that the CRP Contract is ambiguous; thus, we will review the lower court's judgment freely to determine whether the interpretation of the CRP Contract by the district court was correct.

■ In interpreting the CRP Contract, we consider the statutes and regulations governing the CRP and CRP contracts. In construing a written instrument, an appellate court must consider it as a whole and give meaning to all the provisions of the writing to the extent possible. *Magic Valley Radiology Assoc., P.A. v. Professional Business Svcs., Inc.,* 119 Idaho 558, 565, 808 P.2d 1303, 1310 (1991). The CRP was created by 16 U.S.C. § 3831(a) which, at the time this CRP Contract was entered into, stated:

> (a) During the 1986 through 1990 crop years, the Secretary [of Agriculture] shall formulate and carry out a conservation reserve program, in accordance with this subtitle, through contracts to assist owners and operators of highly erodible cropland in conserving and improving the soil and water resources of their farms or ranches.

The length of the CRP Contract is specified under 16 U.S.C. § 3831(e), which states that "the Secretary shall enter into contracts of not less than 10, nor more than 15, years." Pursuant to 16 U.S.C. § 3833, in return for a contract entered into by an owner or operator, the Secretary shall pay an annual rental payment in an amount necessary to compensate for the conversion of highly erodible cropland to a less intensive use or retirement of any cropland base. The statute and the regulations pertaining thereto require that during the ten-year term of the contract, the owner or operator must not only remove the erodible land from production, but must also use prescribed conservation practices.

---

3. Idaho Code § 10–1203 specifically authorizes the entry of a declaratory judgment to settle a dispute regarding the construction of a contract:

**Construction of contracts.**—A contract may be construed either before or after there has been a breach thereof.

16 U.S.C. § 3835 sets forth a three-year ownership requirement for placing land in the program, but also creates an exception which allows non-landowners to participate in the program:

> (2) Paragraph (1) [requiring a three-year ownership period] shall not—
>
> . . . .
>
> > (B) require a person to own the land as a condition of eligibility for entering into the contract if the person—
> >
> > . . . .
> >
> > > (ii) *controls the land for the contract period.*

16 U.S.C. § 3835(a)(2) (emphasis added); *see also* 7 C.F.R. § 7.704.6(a). This statute is incorporated into the CRP Contract in paragraph 2, which is discussed below. 16 U.S.C. §§ 3835(b), (c), and (d) allow for modification or termination of the contract if the owner or operator agrees to the modification or termination or if the Secretary determines that a modification or termination is desirable or in the public interest.

A violation or a termination of the contract can result in serious penalties. The owner or operator can be required to forfeit all rights to receive rental payments and be required to refund to the Secretary all rental payments and cost sharing payments previously received. The same is true if there is a transfer of an interest in the land where the transferee does not assume the obligations of the contract. *See* 16 U.S.C. § 3832(a)(5) and (6). These statutory penalties are incorpo-

rated into the CRP Contract in paragraph 23.[4]

The CRP Contract defines an "owner" as a "person who has legal ownership of farmland including a person who is buying farmland under a purchase agreement." An "operator" is defined as a person "who is in general control of the farming operations on the farm." Under the terms of the contract, the Schiewes, who were tenants of the land, were also "operators" of the farmland. The eligibility requirements set forth in paragraph 2 of the contract state:

> A  In order for any person to be eligible for payments under this contract, such person must be an owner or operator of the eligible cropland and—
>
> > (1) if an operator of eligible cropland, must have operated such cropland for the period beginning not less than 3 years prior to the close of the applicable period for entering into Contracts with the CCC [the Commodity Credit Corporation, a wholly-owned government corporation within the U.S. Department of Agriculture] or January 1, 1985, whichever is later, *and must provide satisfactory evidence that such person will operate such cropland for the contract period;*

(Emphasis added.) This contract provision, requiring evidence that an operator will operate the farmland for the entire contract period, reiterates the requirement in 16 U.S.C.

4. TERMINATION OF THE CONTRACT

> A  (1) If the participant fails to carry out the terms and conditions of this Contract, CCC may, after considering the recommendations of the CD and SCS, terminate this Contract.
> (2) If this Contract is terminated by CCC in accordance with this paragraph 23A, the participant shall:
> > (i) Forfeit all rights to further payments under this Contract and refund all payments received together with interest thereon, as determined by CCC, or
> > (ii) Forfeit all rights to payments under this Contract and pay liquidated damages to CCC at the rate of 25 percent of the annual rental payment specified in item 6 of Form CRP–1 multiplied by the eligible acreage which was offered to be placed in the CRP if no payments have been received by the participant under this Contract.

> . . . .
>
> Therefore, upon the termination of this Contract in accordance with this paragraph 23A, participants to such contract shall be required to refund all payments received, together with interest, or to pay liquidated damages in an amount specified in paragraph 23A(2)(ii) if no payments have been made.
> B  CCC may terminate this Contract if the participant agrees to such termination and CCC determines that termination would be in the public interest.
> C  If the participants fail to carry out the terms and conditions of this Contract but CCC determines that such failure does not warrant termination of this Contract, CCC may require such participant to refund payments received under this Contract or to accept such adjustments in the payment as are determined to be appropriate by CCC.

§ 3835(a)(2), discussed above. The contract assumes a ten-year obligation between the owner and the operator, and, in fact requires the existence of a ten-year obligation in order for the operator to become a party to the contract.

The CRP Contract as well as the relevant regulations[5] evidence an intent to protect tenants and operators of the land. 7 C.F.R. § 1413.109 governs the division of payments on a CRP Contract:

> Each producer on a farm shall be given the opportunity to participate in the program for a crop in proportion to such producer's interest in the program crop on the farm or the interest such producer would have had if the crop had been produced. The name of all such producers shall be listed on the contract.

7 C.F.R. § 1413.109. This regulatory mandate is incorporated into the CRP Contract in paragraph 14(c). A "producer" is "a person who, as owner, landlord, tenant, or sharecropper, shares in the risk of producing the crop, or would have shared had the crops been produced." 7 C.F.R. § 1413.3(u). In the present case, the Schiewes, who were tenants of the land, were producers as defined in the regulations. As required by the above federal regulation, they are named as participants in the contract. Under 7 C.F.R. 1413.109(b)(2), the Schiewes' share of the farm program payment is based on their interest in the crops they would have produced, which is a one-half interest. Under the CRP Contract, the Schiewes and the Farwells each received an annual payment of $50,000.

Paragraph 15 of the CRP Contract sets forth provisions relating to tenants and sharecroppers. These provisions reflect the requirements found in 7 C.F.R. §§ 1413.150. The clear intent of these provisions is to protect tenants and sharecroppers from oppressive behavior by landowners and landlords. Paragraph 15 of the CRP Contract states in pertinent part:

A Payment shall not be approved for the current year if CCC determines that any of the conditions specified below exist:

(1) The landlord or operator has not given the tenants and sharecroppers on the farm an opportunity to participate in the benefits of the program;

(2) The number of tenants and sharecroppers on the farm is reduced by the landlord or operator below the number of tenants and sharecroppers on the farm in the year before the current year in anticipation of, or because of participation in, the program, except that this provision shall not apply to the following:

> (i) *A tenant or sharecropper who leaves the farm voluntarily or for some reason other than being forced off the farm by the landlord or operator in anticipation of, or because of participation in, the program; . . .*

(Emphasis added.) By the terms of this provision, the CCC cannot approve payments for a year in which tenants, have been forced off the land or otherwise deprived of the opportunity to participate in the program.

Reading the contract together with the statutes and provisions requiring that an operator will control the land for ten years, as well as the regulations requiring that producers be allowed to participate in and receive payment for their participation in the CRP Contract, we conclude that the CRP Contract creates a right in the tenant/operator to remain on the land for the total period of the contract. Neither a tenant nor an operator can be involuntarily removed from the land unless the participant fails to carry out the terms and conditions of the contract.

The defendants argue, and the district court found, that the portion of the CRP Contract which allows a continuation of the contract if the land is transferred creates a right on the part of the landlord to terminate an operator or tenant. We disagree. Paragraph 26(a)(1) of the contract states:

---

**5.** Under Section 13 of the CRP Contract, the regulations at 7 C.F.R. § 704 and 7 C.F.R. § 713, among others, are incorporated by reference as part of the contract.

If a new owner or operator purchases or obtains the right and interest in, or right to occupancy [sic], the land subject to this Contract, such new owner or operator may become a participant to this Contract with the same terms and conditions or may offer to enter into a new CRP Contract with CCC covering such transferred land.

We find nothing in this paragraph which creates a right on the part of a landlord or land-owner unilaterally to terminate a tenant or operator. Moreover, we read this contractual provision in conjunction with 16 U.S.C. § 3835(b)(c) and (d) which allow for modification or termination of the contract *if the owner or operator agrees to the modification or termination.* We also read the transfer provision in conjunction with Paragraph 15 of the contract which prohibits contract payments in a year in which a tenant has been forced off the farm. Clearly, if an owner, operator, or tenant sold or otherwise voluntarily transferred his rights under the contract, the owner, operator, or tenant would agree to a modification or termination of the contract. However, in a case such as this where the operator or tenant who does not agree has been forced off the land, the land transfer provision of paragraph 26 is not applicable. The correct action in this case would be for the CCC to either terminate the contract or to refuse payment to the Farwells pursuant to Paragraph 15. Additionally, both Schiewe and the Farwells have the right to terminate the contract. We note that in the event of a termination, the Farwells and Schiewe may be asked to refund all payments they have received under the CRP Contract and to forfeit their rights to future payments, under paragraphs 23(a)(ii), 23(a)(3).

Our interpretation of the CRP Contract is consistent with earlier case law from another jurisdiction. In *Thomas v. Dudrey,* 208 Kan. 684, 494 P.2d 1039 (1972),[6] the Kansas Supreme Court interpreted a contract entered into under the Soil Bank Conservation Reserve Program, 7 U.S.C. § 1801, *et. seq.*[7] In that case, the landowner, Dudrey, requested a revision of the CRP contract with eliminated Thomas as the tenant/operator. Thomas brought an action against Dudrey for damages in the amount of the tenant/operator's share of the annual soil bank payments. The trial court found that the execution of the CRP contract terminated the previous year-to-year, permissive holdover tenancy. The court held that, under the CRP contract, Thomas became a tenant for the entire ten-year period.

Dudrey appealed, arguing that Thomas' rights were dependent upon the continuance of his status as a holdover tenant under the written agricultural lease executed between Thomas and the previous landowner. The appellate court rejected this argument. In reaching the conclusion that Thomas had been wrongly forced to leave the land, the *Thomas* court took note of a federal statute which required the Secretary of Agriculture to take steps to protect tenants and sharecroppers on land that was placed in the Soil Bank Program. The *Thomas* court also noted a Fifth Circuit case, *Caulfield v. U.S. Dept. of Agriculture,* 293 F.2d 217 (5th Cir. 1961), *cert. denied,* 369 U.S. 858, 82 S.Ct. 946, 8 L.Ed.2d 16 (1962), which stated that the legislative history of the Soil Bank Act indicated a congressional policy disfavoring discrimination by landowners against tenants.

Though the statutes relating to the Soil Bank Program have been repealed, the policy of protecting tenants and sharecroppers from the actions of landowners is evident in the statutes and regulations pertaining to the current CRP. As discussed above, the current statutes and regulations require that tenants and sharecroppers share payments on an equitable basis and the CRP Contract itself requires that the CCC withhold payments in any year in which a tenant or sharecropper has been forced off the land.

**6.** *Compare Hill v. Schuhart,* 391 S.W.2d 579 (Tex.Civ.App.1965) (court rejected argument that a Soil Bank Agreement gave a tenant a lease for the full term of the contract).

**7.** The Soil Bank Program was repealed in 1965.

Under the reasoning stated above, we conclude that the CRP Contract estops Farwells from denying Schiewe's tenancy for so long as she remains an "operator" under the CRP Contract. Should Schiewe fail to comply with the terms of the agreement, the remedy is termination of the contract under the provisions of the contract, paragraph 23.

When the CRP Contract was signed, four families held rights in the land. The Farwells, Curl, and Basterrechea held legal title to the land. The Schiewes were in possession of the land and were obligated to care for the land. As long as the Schiewes keep the land in compliance with the terms of the agreement, they are entitled to receive annual payments during the term of the CRP Contract which ends in 1997.

For the reasons stated above, we reverse the judgment of the district court, and remand for entry of a declaratory judgment that Farwells, Curl and Basterrechea are estopped from denying the existence of Schiewe's lease for so long as Schiewe is a party to the subject CRP Contract, and further that the landowners may not terminate Schiewe as an operator under the CRP Contract, except as may be provided by the contract or by any available federal administrative remedies. The district court is directed to vacate its award of costs to the respondents and to reconsider the award of costs and attorney fees. Costs to appellants. I.A.R. 40. No attorney fees on appeal.

WALTERS, C.J., and SMITH, J., Pro Tem., concur.